**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Case No.: 13-cv-02521-PAB-MJW

JERRY W. EDDINS, DENA M. CANNON, SHRISICE WASHINGTON,
DIONNE MACKEY, STEPHANIE S. A. EDDINS, MICHAEL BYCZEK,
TERI NELSON, JULIANA VAN TUIL, KATIE YOUNG, and SUZANNE BOLDEN

on behalf of themselves and other similarly situated,

    Plaintiffs,

v.

TIME WARNER NY CABLE LLC,

    Defendant.

**DEFENDANT TIME WARNER NY CABLE LLC'S EMERGENCY MOTION FOR
PROTECTIVE ORDER**

## I. INTRODUCTION AND MOTION

In the two weeks since filing this action, Plaintiffs, their counsel, and their representatives have engaged in a coordinated, improper, and unethical campaign to solicit clients and participation in this Fair Labor Standards Act action by putative class members—prior to conditional certification and outside of the traditional court-ordered notice procedures. Plaintiffs have even resorted to trespassing on Defendant Time Warner NY Cable LLC's ("TNY") property to hand out Plaintiffs' counsels' business cards and to solicit current employees of TNY to join this action. Notably, when TNY's counsel asked Plaintiffs' counsel, Walker Harman, to ensure that these improper solicitations immediately cease and to instruct his clients to stop this activity, Plaintiffs' counsel pleaded ignorance and refused to help put a stop to such misconduct. The very next day, one of the Plaintiffs, Suzanne Bolden, again tried to gain access to TNY's premises for the purpose of

soliciting clients for Plaintiffs' counsel. In fact, even after Ms. Bolden was directed to leave the premises, she refused to comply and instead tried to gain access through another entrance.

In addition to the above instances of improper conduct, there have also been one-sided, unsupervised solicitations to potential clients and putative class members through internet postings, Facebook messages, text messages, and attempts at direct personal contact. Plaintiffs' counsel is aware of these improper solicitations as well, as he produced text messages in another case pending before this Court containing improper and unethical client solicitations on his behalf by another of his clients, Patrick Hartley. Not only did Plaintiffs' counsel produce these documents in discovery, he attended Mr. Hartley's deposition on September 3, 2013, wherein his client testified that he was soliciting clients on behalf of Plaintiffs' counsel.

Given the vigor with which Plaintiffs and Plaintiffs' counsel's representatives are pursuing their improper solicitation, as well as Plaintiffs' counsels' refusal to take any action to stop this misconduct from continuing, TNY has no choice but to seek the Court's immediate involvement.

These ongoing and unethical solicitations of putative class members by Plaintiffs and their counsel threaten the integrity of this proceeding. Such improper solicitations sabotage the goal of obtaining the informed consent of a plaintiff prior to joining a collective action and have irreparably harmed TNY. Unless immediate action is taken to enjoin Plaintiffs and their counsel from continuing these unsupervised, extrajudicial, and unaccountable solicitations with putative class members, the Court's authority to control the manner in which a putative class is notified regarding the existence of and their ability to join in a collective action will be undermined and TNY will continue to suffer irreparable harm, as well as further disruption of its business operations. Plaintiffs' and their counsels' improper conduct also threatens the fair and just administration of justice in this action and it must be stopped. *See* Fed. R. Civ. P. 1.

Accordingly, TNY, by and through its attorneys, hereby seeks an emergency protective order prohibiting Plaintiffs, their counsel, and any of their representatives, including, but not limited to, Patrick Hartley and the person identified as Kevin Kuhn who posted to the Colorado Springs Gazette article referenced below, from attempting to contact or solicit any putative class members until this Court determines whether to conditionally certify a class and determines how notice will be distributed. Further, TNY requests that Plaintiffs be ordered to provide within three (3) calendar days: (1) a list of all individuals whom Plaintiffs' counsel, Plaintiffs themselves, or any of their representatives have contacted regarding this litigation; and, (2) copies of all communications with putative class members and third parties regarding the facts and circumstances of this litigation, including, but not limited to, communications related to all attempts to solicit class members directly, or indirectly through third parties, to include Patrick Hartley and Kevin Kuhn. Lastly, given that Plaintiffs' counsel denied having any knowledge of this offending conduct, refused to take steps to stop it after being notified of its occurrence, and Plaintiffs continued to attempt to improperly solicit clients after TNY notified Plaintiffs' counsel, the Court also should award TNY its fees for having to file this motion. *See* 28 U.S.C. § 1927.

## II.   FACTUAL BACKGROUND

### A.   Procedural History.

This is a collective action purportedly brought by Plaintiffs under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* on behalf of themselves and other current and former employees of TNY who worked or are working at TNY's Colorado Springs, Colorado call center. Plaintiffs also purport to bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and others under the overtime provision of the Colorado

Minimum Wage Order ("CMWO") 7 Colo. Code Regs. § 1103-1, *et seq.* and the Colorado Minimum Wages of Workers Law ("CMWWL") C.R.S. § 8-6-101, *et seq.*

Plaintiffs' Complaint was filed on September 16, 2013, and the action was referred to Magistrate Judge Watanabe on September 17, 2013.

On September 20, 2013, TNY was served with a Summons and copy of the Complaint. TNY's Answer is due on or before October 11, 2013.

  **B.  Relevant Factual History.**

In a separate action before this Court,[1] Plaintiffs' counsel, Walker Harman, represents a plaintiff, Patrick Hartley ("Hartley"), who is pursuing similar claims against TNY for violations of the FLSA. In that action, Plaintiffs' counsel produced numerous text messages wherein Hartley solicited multiple current and former employees of TNY on Plaintiffs' counsel's behalf (the "Hartley Communications"). (*See* Ex. 1 to Decl. of Nathan D. Chapman ("Chapman Decl."), attached hereto as Exhibit A.) Hartley sent messages to putative class members that stated:

- "My attorney is interested in speaking with you. He may also be willing to discuss possible representation. His name is Walker Harman. You may also speak with Brian Moss as well."
- "TWC uses legal means to target employees on FMLA or protected under other laws."
- "[I]f any of you have ever had to arrive early or stay late to bring up or turn off your computer, please contact my attorney as well. there is a lot of unpaid overtime."

(*Id.*) On September 3, 2013, Plaintiffs' counsel attended Hartley's deposition, wherein Hartley testified that he had been soliciting clients on behalf of Plaintiffs' counsel. (*See* Chapman Decl. ¶ 3; Ex. 1 to Chapman Decl.)

---

[1] *Patrick Hartley v. Time Warner NY Cable LLC*, Case No.: 13-cv-00158-RPM-MJW (D. Colo. filed Jan. 23, 2013).

4

Hartley's solicitations for Plaintiffs' counsel were successful, as some of the individuals Hartley solicited are now Plaintiffs in this action, including Plaintiffs Suzanne Bolden and Dena Cannon. (*Id.*) Others are members of the putative class in this action. (*See id.*) On September 17, 2013, one day after the filing of the Complaint in this action, an online commenter, identified as Kevin Kuhn, posted a comment (the "Internet Communication")[2] to a Colorado Springs Gazette website news article about the filing of the Complaint in this action that stated: "**email brian moss at bmoss@theharmanfirm.com and call 212-425-2600 if you've worked or still work for TWC and you keep being mistreated:**(" (Ex. 4 to Chapman Decl.)[3]

On September 26, 2013, Plaintiff Suzanne Bolden ("Bolden"), a former employee of Defendant, trespassed on TNY's property and entered the call center. (*See* Declaration of Jason Cross ("Cross Decl.") ¶¶ 4-6, attached hereto as Exhibit B.) Bolden approached a current employee and discussed this lawsuit as well as claims other individuals have against TNY (the "Bolden Communications"). (*Id.* ¶ 7.) Bolden's unauthorized and disruptive presence in the call center was reported to Jason Cross ("Cross"), TNY's Human Resources Business Partner. (*See id.* ¶¶ 8, 26.) Cross immediately went to Bolden's location, told her she was not permitted on the premises, and had her leave the building. (*Id.* ¶ 9.)

Ignoring Cross's instruction that she was not permitted on TNY's premises, on October 1, 2013, Bolden again trespassed on TNY's property and sought to gain access to the call center to

---

[2] On September 30, 2013, another online commenter, identified as CJ Roberts, posted to the same comment section and stated:

> "I got a call from the lawyers in New York, they're actually going to be in Colorado Springs all this week, to talk to people involved in the law suit. I hope its a speedy trial. We deserve OUR money!!"

(Ex. 4 to Chapman Decl.)

[3] On Plaintiffs' counsel's law firm website, Brian Moss ("Moss") is listed as Of Counsel with The Harman Firm, P.C. Moss has not made an appearance in this action.

hand out business cards and solicit clients on behalf of counsel for Plaintiffs in this action. (*See id.* ¶¶ 10-13.) Although Bolden was successful in trespassing on TNY's property, her attempts to enter the call center were not because she was identified by current employees when she arrived in the parking lot. (*See id.*) After being identified in the parking lot, Bolden drove away from the area without ever leaving her vehicle. (*See id.*)

Following her departure, it was reported to Cross by a current TNY employee that Bolden intended to return to the call center on October 2, 2013, to again attempt to hand out business cards and solicit clients on behalf of Plaintiffs' counsel. (*Id.* ¶ 14.)

On October 1, 2013, upon learning of Bolden's improper and unethical actions in seeking to solicit clients for Plaintiffs' counsel, Nathan D. Chapman, counsel for TNY, sought the assistance of Plaintiffs' counsel (Walker Harman) in putting a stop to such unlawful and unethical conduct. Specifically, Mr. Chapman informed Mr. Harman that:

> It has come to our attention that one of your clients has been trespassing at Time Warner Cable's Colorado Springs call center to solicit clients on behalf of your firm. As you know, this is a serious ethical violation by your firm, as well as a potential criminal matter for your client. This e-mail is notice to you and your client that this conduct must cease immediately.
>
> Furthermore, consistent with your ethical obligations, you must retain copies of all communications with putative class members and third parties regarding the facts and circumstances of this case, including, but not limited to, communications related to your attempts to solicit class members directly or indirectly through third parties, such as Mr. Hartley. You also should retain a list of all individuals whom you or your clients have contacted regarding this litigation.
>
> Please confirm that you will take the steps outlined above by no later than 12 pm (EST) tomorrow.
>
> We reserve all rights to seek any appropriate remedies from the Court for this misconduct.

(Ex. 2 to Chapman Decl.)

Mr. Harman refused to provide assistance. Instead, at 12:25 p.m. the next day, he wrote:

> As a factual matter, we have absolutely no idea what you are talking about. Sir, I would suggest you do your homework before making allegations of ethical violations.
>
> As to the law, our obligations and your gratuitous instructions on how to practice law, we have no comment.

(Ex. 3 to Chapman Decl.)

A few hours later, at 4:35 p.m., Eastern Standard Time, on October 2, 2013, after Plaintiffs' counsel refused to take any action or even acknowledge the improper, unethical, and highly disruptive soliciting of current employees at the call center by his client, Bolden again attempted to access the call center (for a third time) to improperly solicit on behalf of Plaintiffs' counsel. (*See* Cross Decl. ¶¶ 14-15, 18.) Upon arriving and approaching the call center's lobby, Cross told Bolden that she was not permitted to enter the call center, that she needed to stop attempting to trespass on TNY's property, that she needed to depart the premises, and that any future attempts to trespass on TNY's property would result in TNY calling the police to report her for trespassing. (*Id.* ¶ 19.) Thereafter, Bolden returned to her vehicle, but did not leave. (*Id.* ¶ 19.) Instead, she persisted in attempting to enter the call center by driving to a different entrance. (*See id.* ¶¶ 21-23.) Cross also thwarted her attempt to gain access through that entrance. (*See id.* ¶¶ 24-25.) Bolden only departed TNY's property when a security guard approached her vehicle. (*See id.*)

Bolden's persistent attempts to enter the call center to hand out Plaintiffs' counsels' business cards and otherwise solicit TNY's current employees as clients for Plaintiffs' counsel make it clear that she will continue her efforts unless otherwise enjoined by this Court. (*See id.* ¶ 26.)

### III. ARGUMENT AND CITATION OF AUTHORITY

#### A. The Applicable Legal Standard.

> The United States Supreme Court has recognized that while "[c]lass actions serve an important function in our system of civil justice," they also present "opportunities for abuse." *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 99-100, 101 S. Ct. 2193, 68 L. Ed. 2d 693 (1981). The Supreme Court has further recognized that the same unique

> potential for abuse inherent in class action suits is also present in collective actions with respect to "misuse of the class device." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 171, 110 S. Ct. 482, 107 L.Ed.2d 480 (1989) (applying *Gulf Oil* to collective actions). **The potential abuses include "heightened susceptibilities of nonparty class members to solicitation amounting to barratry as well as the increased opportunities of the parties and counsel to 'drum up' participation in the proceeding" and "[u]napproved communications to class members that misrepresent the status or effect of the pending action."** *Gulf Oil*, 452 U.S. at 101 n. 12, 101 S. Ct. 2193.

*Hamm v. TBC Corp.*, 597 F. Supp. 2d 1338, 1351 (S.D. Fla. 2009) (emphasis added).

To prevent abuses in collective actions with respect to misuse of the class device and avoid the harms that arise from improper solicitations of putative class members, "a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *See Gulf Oil*, 452 U.S. at 100; *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) ("[A] federal court has the power to control admission to its bar and to discipline attorneys who appear before it."); *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 461 (1978) ("The Rules prohibiting solicitation are prophylactic measures whose objective is the prevention of harm before it occurs.").

This duty to exercise control over a class and collective action includes the authority to issue appropriate protective orders regulating the manner in which a plaintiff may communicate with putative class members and regulating the conduct of the parties to ensure that ethical rules are not violated. *See Gulf Oil*, 452 U.S. at 100; *Hamm v. TBC Corp.*, 345 F. App'x 406, 410 (11th Cir. 2009); *Bass v. PJCOMN Acquisition Corp.*, Civil Action No. 09-cv-01614-REB-MEH, 2011 WL 902022, at *3 (D. Colo. Mar. 14, 2011) (citing *Gulf Oil*, 452 U.S. at 89) ("Courts have the authority to restrict communication between parties and putative class members if necessary to prevent abuse of the class action process."); *Hamm*, 597 F. Supp. 2d at 1352-53 (district court has broad authority to enter orders addressing improper client solicitations in violation of applicable ethical rules).

Court involvement in supervising and regulating the manner in which a plaintiff's counsel communicates to a putative class member promotes judicial efficiency and avoids misuse of the class device, misleading communications, and "the need to cancel consents obtained in an improper manner." *See Hoffman-La Roche*, 493 U.S. at 170-73; *see also Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1203 (11th Cir. 1985) ("Unsupervised, unilateral communications with the plaintiff class sabotage the goal of informed consent . . . on the basis of a one-sided presentation of the facts, without opportunity for rebuttal. The damage from misstatements could well be irreparable."); *Dolan v. Project Constr. Corp.*, 725 F.2d 1263, 1268-69 (10th Cir. 1984), *overruled in part by Hoffman-La Roche*, 493 U.S. 165 (1989) ("The role of the court in § 216(b) actions is one of administering and monitoring the litigation process to ensure a fair trial for all parties."); *Erhardt v. Prudential Grp., Inc.*, 629 F.2d 843, 846 (2nd Cir. 1980) ("Unapproved notices to class members which are factually or legally incomplete, lack objectivity and neutrality, or contain untruths will surely result in confusion and adversely affect the administration of justice."); *Bass*, 2011 WL 902022, at *3 ("[U]nilateral communications between a party and putative class members have the potential for coercion.").

"The decision to issue a protective order rests within the sound discretion of the trial court." *Bass*, 2011 WL 902022, at *3. To obtain a protective order limiting communications in a class or collective action, the moving party need only satisfy two criteria: (1) that "a communication [to putative class members] has occurred or is threatened to occur;" and, (2) "the form of communication at issue is abusive and threatens the proper functioning of the litigation." *See Bass*, 2011 WL 902022, at *3 (citing *Ojeda-Sanchez v. Bland Farms*, 600 F. Supp. 2d 1373, 1378 (S.D. Ga. 2009)). Ultimately, the decision to issue a protective order "limiting communications between parties and potential class members should be based on a clear record and specific findings that

reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *See Gulf Oil*, 452 U.S. at 101; *see also Dolan*, 725 F.2d at 1268; *Zinser v. Cont'l Grain Co.*, 660 F.2d 754, 762 (10th Cir. 1981). Because a district court must weigh the need for a limitation and potential interference with the rights of parties, any order limiting communications is to be tailored to provide sufficient protections based on the conduct of the parties and the record before the Court. *See Gulf Oil*, 452 U.S. at 102.

### B. Plaintiffs Have Improperly Communicated with Putative Class Members and Will Continue Doing So Absent a Protective Order.

There is no doubt that Plaintiffs and Plaintiffs' counsel, through their representatives, have improperly solicited putative class members in a variety of formats. These communications and the attempted communications that have been discovered to date include the Hartley Communications, the Internet Communication, and the Bolden Communications. Such communications show that Plaintiffs and their counsel are clearly engaged in an active, coordinated campaign of soliciting putative class members with a complete disregard for the notice mechanisms, and concurrent Court supervision of and involvement in the notice process, that are applicable to actions brought under the FLSA. Moreover, the fact that Plaintiffs' counsel refuses to take any action regarding his clients' conduct in actively soliciting clients and putative class members and trespassing on TNY's property highlights the continuing, ongoing nature of this abusive conduct and the necessity of Court intervention to stop it.

### C. Plaintiffs' Communications Have Been Abusive and Threaten the Proper Functioning of this Litigation.

There is no question that these unsupervised and unilateral solicitations by Plaintiffs and Plaintiffs' counsel, through their representatives, have been abusive and threaten the proper functioning of this litigation. Specifically, the communications: (1) lack objectivity and neutrality;

10

(2) have sabotaged the essential need to obtain informed consent from any opt-in plaintiffs based on Plaintiffs' one-sided presentation of the facts, without any opportunity for rebuttal by TNY; (3) are factually and legally incomplete; (4) are misleading and contain untruthful statements; (5) constitute a blatant attempt to secure additional plaintiffs for counsels' own pecuniary gain and to "drum up" participation in this action; and, (6) violate applicable ethical rules that apply to attorneys practicing before this Court. *See Hoffman-La Roche*, 493 U.S. at 170-73 (abuse of proper functioning of collective action litigation for communications to putative class member to contain misleading or untruthful information); *Gulf Oil,* 452 U.S. at 101 n. 12 (abuse of litigation process to seek out additional opt-in plaintiffs for pecuniary gain and to "drum up" participation in proceeding); *Kleiner*, 751 F.2d at 1203 ("Unsupervised, unilateral communications with the plaintiff class sabotage the goal of informed consent . . . on the basis of a one-sided presentation of the facts, without opportunity for rebuttal."); *Erhardt*, 629 F.2d at 846 (proper functioning of litigation threatened when party makes communications to putative class members that are misleading, factually or legally incomplete, or lack objectivity and neutrality); *Hamm*, 597 F. Supp. 2d at 1352-53 (violations of applicable ethical rules in the litigating conduct of counsel threatens the integrity and functioning of a litigation). Further, Plaintiff Bolden's misconduct – including her unlawful trespasses on TNY's property – has been highly disruptive to TNY's business operations.

As an initial matter, the tone of the communications at issue here is anything but neutral or objective, as is required when communicating with putative class members. *See Hoffman-La Roche*, 493 U.S. at 170-73; *Erhardt*, 629 F.2d at 846. The Hartley Communications openly solicited clients on behalf of Plaintiffs' counsel and accuse TNY of "targeting" certain employees and conclude that there is "a lot of unpaid overtime." The Internet Communication alleges that employees of TWC "keep being mistreated" in undefined ways and openly invite current or former

11

employees to contact Plaintiffs' counsel. The Bolden Communications and attempted communications are clearly biased and directed at persuading current employees to either join the litigation or otherwise contact and hire Plaintiffs' counsel. That the communications lacked objectivity and were factually incomplete is indisputable because they were one-sided and did not provide the opportunity for rebuttal. *See Kleiner*, 751 F.2d at 1203; *Erhardt*, 629 F.2d at 846 ("Unapproved notices to class members which are factually or legally incomplete, lack objectivity and neutrality, or contain untruths will surely result in confusion and adversely affect the administration of justice."). The communications are also misleading and factually and legally incomplete because they do not contain an explanation of the facts and circumstances of the case, explain the legal basis for the claims, or advise putative class members of their potential liability for costs or attorneys' fees in the action if it is not successful. *See Hoffman-La Roche*, 493 U.S. at 170-73; *Erhardt*, 629 F.2d at 846. As such, the communications are abusive and threaten the proper functioning of this litigation.

Perhaps most significantly, the communications have sabotaged the ability of the Court to ever obtain informed consent from any putative class members contacted in this action due to Plaintiffs' one-sided presentation of the facts, without any opportunity for rebuttal by TNY. *See Kleiner*, 751 F.2d at 1203. Plaintiffs have misrepresented and omitted relevant legal and factual information in this action and caused irreparable harm by providing biased information such that no putative class member they have contacted to date—outside of the Court's supervision—can or will be said to have given their informed consent to join this action. *See id.* TNY and the Court have forever lost the ability to present fair, neutral, and truthful information in the first instance to these putative class members. Plaintiffs' "subterfuge and subversion constitute[] an intolerable affront to the authority of the district court to police class member contacts" and has "relegate[d] the essential

supervision of the court to the status of an 'afterthought.'" *See id.* Plaintiffs' communications in this regard clearly are abusive and have interfered in the proper functioning of this litigation.

Lastly, the communications threaten the proper functioning of this litigation because they violate the standards of professional responsibility applicable to attorneys practicing in this Court, which include the Colorado Rules of Professional Conduct. D.C. Colo. L. Civ. R. 83.4. As attorneys admitted to practice before this Court, Plaintiffs' counsel are subject to the requirements of Colorado Rules of Professional Conduct 7.3 ("Rule 7.3"), which generally prohibits the solicitation of prospective clients.[4] Rule 7.3(a) provides:

> A lawyer shall not by in-person, live telephone or real-time electronic contact solicit professional employment from a prospective client when a significant motive for the lawyer's doing so is the lawyer's pecuniary gain, unless the person contacted:
>
> (1) is a lawyer; or
>
> (2) has a family, close personal, or prior professional relationship with the lawyer.

Rule 7.3(a).

The Hartley Communications, Internet Communication, and Bolden Communications fail to adhere to these requirements. Plaintiffs' counsel have relied upon, permitted, and encouraged Plaintiffs, Hartley, and other representatives to act on their behalf to solicit clients. Accordingly, Plaintiffs' counsel have clearly violated their ethical obligations by soliciting, including by and through their Plaintiffs, prospective clients, who are neither attorneys or persons who have a familial, close personal, or prior professional relationship with Plaintiffs' counsel. These unethical solicitations are an additional reason to find that these abusive communications threaten the proper

---

[4] An attorney cannot evade the requirements of Rule 7.3 by relying upon, permitting, or encouraging his "employees, agents or other persons to make communications on behalf of the" attorney or his law firm. *See* Rule 7.1(e).

functioning of the litigation process such that an order must issue from this Court to put such unethical conduct to an end. *See Hamm*, 597 F. Supp. 2d at 1352-53.

### D. The Court Should Award TNY its Fees in Having to File This Motion for a Protective Order.

Plaintiffs' counsels' stubborn refusal to take steps to cease this offending conduct warrants an award of TNY's attorneys' fees and costs associated with the instant Motion because they have unreasonably and vexatiously multiplied these proceedings. 28 U.S.C. § 1927. As evidenced by the email correspondence discussed above, and pursuant to Local Civil Rule 7.1(A), TNY made reasonable, good-faith efforts to obtain assistance from Plaintiffs' counsel to resolve this matter and stop the offending conduct prior to filing this Motion. Had Plaintiffs' counsel appropriately and reasonably responded to TNY's request that he take action regarding the improper and unethical conduct of his clients, the instant Motion could have been avoided. Instead Plaintiffs' counsel elected to respond as he did, his client engaged in grossly improper conduct just hours later, and TNY has now been forced to seek relief from the Court. Clearly, under these circumstances, an award of attorneys' fees and costs associated with this Motion is warranted.

### IV.   CONCLUSION

The misleading, biased, unsupervised, and factually and legally incomplete communications by Plaintiffs and their counsel to putative class members threaten the integrity of the judicial process and are clearly nothing more than an unethical attempt "to 'drum up' participation in the proceeding." *See Gulf Oil,* 452 U.S. at 101 n. 12. Plaintiffs are clearly misusing and abusing the collective action device and relief from the Court is necessary to stop this improper conduct. *See id.*

Accordingly, the Court should preclude Plaintiffs, Plaintiffs' counsel, and any of their representatives, including, but not limited to, Patrick Hartley and the person identified as Kevin

Kuhn who posted to the Colorado Springs Gazette article, from attempting to contact or soliciting any putative class members until this Court determines whether to certify a class and, if so, how notice will be distributed to the putative class. Further, TNY requests that Plaintiffs be ordered to provide within three (3) calendar days: (1) a list of all individuals whom Plaintiffs' counsel, Plaintiffs themselves, or any of their representatives have contacted regarding this litigation; and, (2) copies of all communications with putative class members and third parties regarding the facts and circumstances of this litigation, including, but not limited to, communications related to all attempts to solicit class members directly or indirectly through third parties, including Hartley.[5] In light of Plaintiffs', Plaintiffs' counsels', and their representatives' conduct to date, there is no narrower order that can properly ensure that this unethical and improper conduct will not continue.

Respectfully submitted, this 3rd day of October, 2013.

| s/ *Nathan D. Chapman* | s/ *Josh A. Marks* |
|---|---|
| Nathan D. Chapman | Josh A. Marks |
| WARGO & FRENCH LLP | BERG HILL GREENLEAF & RUSCITTI LLP |
| 999 Peachtree Street, NE | 1712 Pearl Street |
| 26th Floor | Boulder, CO 80302 |
| Atlanta, Georgia 30309 | Tel: (303) 402-1600 |
| Tel: (404) 853-1500 | Fax: (303) 402-1601 |
| Fax: (404) 853-1501 | Email: jam@bhgrlaw.com |
| Email: nchapman@wargofrench.com | |

*Attorneys for Defendant Time Warner NY Cable LLC*

---

[5] TNY is conducting an ongoing inquiry into the scope and harm Plaintiffs' and Plaintiffs' counsels' conduct has caused and, if appropriate, may move for sanctions under Federal Rules of Civil Procedure 11 and/or 37 at the appropriate time. Obtaining a list of persons contacted and copies of relevant communications is necessary to fully assess the harm caused by Plaintiffs' and Plaintiffs' counsels' conduct.

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 3, 2013, a true and correct copy of this **DEFENDANT TIME WARNER NY CABLE LLC'S EMERGENCY MOTION FOR PROTECTIVE ORDER** was e-served upon the following via ECF/PACER:

Ian D. Kalmanowitz
CORNISH & DELL'OLIO
431 North Cascade Avenue, #1
Colorado Springs, CO 80903

Walker G. Harman, Jr.
THE HARMAN FIRM, P.C.
200 West 57th Street, Suite 900
New York, NY 10123

                                                *s/ Nathan D. Chapman*
                                                Nathan D. Chapman