**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Case No. 1:13-cv-02521-RM-MJW

JERRY W. EDDINS, DENA M. CANNON, STEPHANIE S. A. EDDINS,
JULIANA VAN TUIL, *and* SUZANNE BOLDEN
*on behalf of themselves and others similarly situated*,

      Plaintiffs,

v.

TIME WARNER NY CABLE LLC,

      Defendant.

---

**PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION OF A COLLECTIVE ACTION UNDER THE FAIR LABOR STANDARDS ACT, 29 U.S.C. §216(b) AND FOR COURT ASSISTED NOTICE UNDER AUTHORITY OF *SPERLING V. HOFFMAN-LA ROCHE*, 493 U.S. 165 (1989)**

---

Plaintiffs Dena M. Cannon, Juliana Van Tuil, Jerry W. Eddins, Stephanie S. A. Eddins[1], and Suzanne Bolden[2], on behalf of themselves and all other persons similarly situated, by and through their attorneys, The Harman Firm, PC and Cornish & Dell'Olio, P.C., respectfully submit this Motion for Approval of Collective Action Notice (Preliminary Collective Action Certification), which is supported by the exhibits attached hereto.

### I. Preliminary Statement

In *Eddins et al. v. Time Warner NY Cable, LLC.* (the "Action"), Plaintiffs are suing Time Warner NY Cable, LLC. (hereinafter Defendant or "TWC") for unpaid overtime compensation

---

[1] Plaintiffs Jerry W. Eddins and Stephanie S. A. Eddins moved for dismissal from the case as named Plaintiffs on February 6, 2014 (*see* Docket # 71). That motion was granted by the Court on February 6, 2014; however, Plaintiffs Eddins and Eddins moved to amend their motion so that they would retain the right to opt-in to the present case at a later date. Defendant opposed the amended motion, and the Court withdrew the Order dismissing Eddins and Eddins on February 7, 2014. The Court has not yet ruled on the amended motion to dismiss.

[2] On January 22, 2014, the Hon. Judge Moore adopted the Hon. Judge Watanabe's recommendation dismissing Plaintiffs, Shrisice Washington, Dionne Mackey, Michael Byczek, Teri Nelson, and Katie Young from this action, without prejudice.

under, *inter alia*, the Fair Labor Standards Act, ("FLSA"), 29 U.S.C. §§ 201, *et seq*. Plaintiffs are overtime-eligible former employees of Defendant who worked at its call center located at 2221 E. Bijou St., Colorado Springs, CO 80909-8009 (the "Call Center"). Plaintiffs all had the position, "Customer Service Representative." Defendant had a policy of requiring employees to work overtime off the clock without pay. Plaintiffs and putatitive Plaintiffs all worked off the clock overtime without pay. The primary duty of Customer Service Representatives is to communicate with customers via telephone and provide service to said customers. In addition to the named Plaintiffs, former and current employees of TWC have opted in to this Action. *See* Opt-In Forms, "Exhibit J." In addition to evidence provided by the named Plaintiffs, this Motion is also supported by evidence obtained from the opt-in Plaintiffs, as well as third-party witness Christopher McKitrick.

At all times, Plaintiffs were scheduled to work five (5) shifts per week. Each shift is eight and one half (8.5) hours or nine (9) hours long with unpaid breaks of thirty (30) minutes or one (1) hour, respectively. Defendant pays Plaintiffs for forty (40) hour per week regardless of how many hours Plaintiffs actually work. As alleged in Plaintiffs' Class and Collective Action Complaint ("Complaint") and as set forth in this Motion and the supporting Affidavits, Defendant compels Plaintiffs to work without compensating them (i) before, (ii) during, and (iii) after each shift. Defendant operates the Call Center under a single policy (the "Policy") requiring Plaintiffs to work before, during, and after each shift without compensation. Management developed this Policy and mandates it through supervisors to the Customer Service Representatives.

Plaintiffs seek preliminary collective action certification of a class consisting of all employees with the title "Customer Service Representatives" who worked at the Call Center at

anytime during the three (3) years preceding the filing of the Complaint in this Action on September 16, 2013 (the "Putative Class Members").  Collective action certification is proper because Plaintiffs and the Putative Class Members are similarly situated to one another and were all subject to the same single illegal Policy compelling them to work overtime hours before, during and after their shifts for which they were not compensated.  There are believed to be hundreds of Putative Class Members who were impacted by Defendant's illegal Policy.  Many of these current and former employees are likely unaware of the illegality of Defendant's Policy, the pendency of this Action, or of their rights to opt-in to it as Plaintiffs.  This is a serious problem because the short three-year (3-year) statute of limitations under the FLSA is running.

Therefore, Plaintiffs seek judicial approval to notify all Putative Class Members as quickly as possible of this lawsuit and of their rights to opt-in.  If the Putative Class Members are not promptly notified, it is likely that a substantial number of them will never learn that they may be entitled to overtime compensation for the hours they worked before, during and after their shifts but for which they were never paid.  Collective actions are designed to prevent precisely this from happening.

## II.     Relevant Procedural History

On September 16, 2013, Plaintiffs filed their Class & Collective Action Complaint.

On October 11, 2013, Defendant filed its Answer.

From September 20, 2013 to February 12, 2014, eleven (11) other individuals[3] opted-in to this Action.

On October 24, 2013, counsel for the parties held a Rule 26(f) meeting.

---

[3] These indivduals are Cynthia Roberts, Anthony Fournier, Angela Kimble, Clementine M. Robinson, Cynthia Vickers, LaTassie Lacey, LaToryia D. Mackey, Sergio Alcala, Anthony Sandoval, Alberto Portalatin, and Antonino Garcia.

On November 14, 2013, Plaintiffs and Defendant took part in a Scheduling Conference before the Court.

On November 14, 2013, the Court entered a Scheduling Order governing the present Action, a copy of which is included as "Exhibit K."

On March 7, 2014, phase-one discovery, regarding conditional certification issues, concluded.[4]

Pursuant to the Scheduling Order, Plaintiffs' instant Motion for Conditional Certification is due between April 7 and April 11, 2014.

### III.   Statement of Facts

Defendant TWC is a Delaware limited liability company authorized to do business in the State of Colorado. Complaint, ¶ 5. TWC owns, operates, and manages the Call Center, which services Time Warner Cable customers in the Southwest United States, including southern California. Complaint, ¶ 5. Plaintiffs are current and former "Customer Service Representatives" at the Call Center. Complaint, ¶¶ 1, 19. Plaintiffs are overtime-eligible, hourly employees. Complaint, ¶¶ 1, 19. Plaintiffs are scheduled to work five (5) shifts per week. Complaint, ¶ 20; Affidavit of Dena Cannon, "Exhibit C," ¶ 6; Affidavit of Sergio Alcala, "Exhibit D," ¶ 6; Affidavit of Suzanne Bolden, "Exhibit E." ¶ 6. Each shift is eight and one half (8.5) hours or nine (9) hours long with unpaid breaks of thirty (30) minutes or one (1) hour, respectively. Complaint, ¶ 20; Exs. C-E, ¶ 6. Defendant pays Plaintiffs for forty (40) hour per week regardless of how many hours Plaintiffs actually work. Complaint, ¶ 21; Exs. C-E, ¶ 6[5]. Defendant compels Plaintiffs to work without compensating them (i) before, (ii) during and after

---

[4] The following individuals were deposed as part of phase one discovery: Suzanne Bolden, Juliana Van Tuil, Dena Cannon, Sergio Alcala, Christopher McKitrick, and Latassie Lacey.
[5] However, occasionally, Plaintiffs did receive paid overtime for short term projects or when fielding a call took them past the end of their shift. (Ex. H, 164:19-23.)

each shift. Complaint, ¶ 22; Deposition of Dena Cannon, "Exhibit F," 124:16-21; Deposition of Juliana Van Tuil, "Exhibit G," 146:8-13. Defendant compels Plaintiffs to work without compensation as part of the Policy, which includes having to boot up your computer and load all software and software updates. Complaint, ¶ 47. ("Q: Who said that [employees had to be ready at the start of their shift] specifically? A: Specifically, every manager that I worked for. Q: Who? Give me an example. A: James McEwen, Keron Singh, Jeff Smith." Deposition of Christopher McKitrick, "Exhibit H," 73:3-7.)

      1.     **Plaintiffs were not paid for work before the start of their shifts.**

Each Plaintiff has a computer at his or her workstation through which customers' calls are serviced. Complaint, ¶ 23; Exs. C-E, ¶ 7. Plaintiffs use several computer programs while servicing customers' calls, including, without limitation: Microsoft Office Lync, Internet Explorer, Advance Customer Service Representative, Advanced Agent Desktop, Orange Tools/Docsis, Webmail/Outlook, Avaya Phone System, Offers Playsheet, Issue Track, and Kronos. Complaint, ¶ 24; Exs. C-E, ¶ 8; Ex G, 149:1-12; Deposition of Suzanne Bolden "Exhibit I," 148:8 – 149:3. Plaintiffs' time is tracked for payroll purposes through Kronos. Complaint, ¶ 25; Exs. C-E, ¶ 9. Plaintiffs do not start receiving customers' calls until they are logged into Kronos. Complaint, ¶ 25; Exs. C-E, ¶ 9. Plaintiffs had to log in to Kronos at the precise starts of their shifts or they were subjected to discipline. Complaint, ¶ 26; Exs. C-E, ¶ 9; Ex. H, 41:23-24, 49:20 - 50:13; Ex. I, 96:1-19. Plaintiffs begin receiving calls immediately upon logging in to Kronos. Exs. C-E, ¶ 10; Ex. F, 111:10-18. Therefore, all of the aforementioned computer programs must be "booted-up" before Plaintiffs logged in to Kronos. Complaint, ¶ 27; Exs. C-E, ¶ 10. Plaintiffs estimate it takes in excess of ten (10) minutes to boot-up these programs. Complaint, ¶ 28; Exs. C-E, ¶ 10. ("The max amount of time I think I took getting in

there would have been about half an hour…[u]sually approximately, say, 15, 20 minutes." Ex G, 146:8-13.) So they could login to Kronos at the precise starts of their shifts, Plaintiffs had to be at their workstations and begin the booting-up process at least ten (10) minutes before the scheduled starts of their shifts. Complaint, ¶ 29; Exs. C-E, ¶ 10-11. ("[W]e had to be there…to log on." Ex I, 60:25-61:1.) Plaintiffs were not compensated for the time spent before their shifts booting-up their computers. Complaint, ¶ 30; Ex. G, 99:12-13. Thus, in addition to the forty (40) hours Plaintiffs worked each week for which they were compensated, at all relevant times, Plaintiffs worked in excess of ten (10) minutes before each shift for which they were not compensated. Complaint, ¶ 31. ("Q: And how much time did you spend before your … shift each day that you weren't compensated for? A: Approximately 15-20 minutes." Ex. G, 205:13-16.) Plaintiffs assert this is the case for all Putative Class Members. Exs. C-E, ¶¶ 7-11; Ex. H, 72:22 - 73:2.

### 2. Plaintiffs were not paid for work during and after their shifts.

Plaintiffs were required to log out of Kronos for their unpaid breaks each shift or they were subjected to discipline. Complaint, ¶ 32; Exs. C-E, ¶ 12; Ex. F, 142:21 – 143:7. Plaintiffs had to log out of Kronos at the precise ends of their shifts or they were subjected to discipline. Complaint, ¶ 40; Exs. C-E, ¶ 12. When Plaintiffs finish with one call, another call is immediately put through to them. Complaint, ¶ 34, 41; Exs. C-E, ¶ 13. Customers' calls would often generate other work that Plaintiffs had to do. Complaint, ¶ 35, 42; Exs. C-E, ¶ 14; Ex. F, 43:14 – 44:4. For example, if a customer needed a technician to come to his or her home, Plaintiffs would have to complete a work order through one of the previously mentioned computer programs. Complaint, ¶ 35, 42; Exs. C-E, ¶ 14; Ex. G, 112:3 – 113:23. As a result, Plaintiffs would often have to complete work orders while logged out of Kronos during their

6

unpaid breaks and after their shifts.  Complaint, ¶ 36, 43; Exs. C-E, ¶ 15.  ("And you could not -- there's no way you can do that while taking back to back calls.  There is – it's impossible.  So those would have to be done before or after work or during a break." Ex. F, 124:16-21.)

Plaintiffs estimate that, at least two (2) or three (3) times per week, they were compelled to work in excess of ten (10) minutes through their breaks or after their shifts.  Complaint, ¶¶ 37, 44; Exs. C-E, ¶ 15; Ex. F, 148:19-23, 152:6-14.  Plaintiffs were not compensated for the time spent working during their unpaid breaks or after their shifts.  Complaint, ¶¶ 38, 45.  Thus, in addition to the forty (40) hours Plaintiffs worked each week for which they were compensated, at all relevant times, Plaintiffs worked in excess of twenty (20) minutes per week during and after their shifts for which they were not compensated.  Complaint, ¶¶ 39, 44; Exs. C-E, ¶ 15; Ex. F, 148:19-23, 152:6-14.  Plaintiffs assert this is the case for all Putative Class Members.  Exs. C-E, ¶¶ 7-11; Ex. F, 125:8 – 126:6.

### IV.  Legal Basis for FLSA Action

The FLSA mandates that no employer can employ "any of [their] employees who in any workweek . . . [works] longer than forty hours unless such employee receives compensation . . . at a rate not less than one and one-half times the regular rate at which [they are] employed."  29 U.S.C. § 207(a)(1).  Section 216(b) of the FLSA provides for a private right of action to recover unpaid overtime compensation and liquidated damages from employers who violate the FLSA's overtime provisions.  The Plaintiffs allege that Defendant exercised a policy of regularly and systematically requiring Customer Service Representatives at the Call Center to work more than forty (40) hours a week, and did not compensate Customer Service Representatives for this overtime.

### V.   Certification of FLSA Collective Action

The FLSA provides for its own right of collective certification, separate and apart from Rule 23 of the FED. R. CIV. P., which governs class actions generally. *Stransky v. HealthONE of Denver, Inc.*, No. 11-cv-2888, 2012 WL 6548108, at *4 (D.Colo. Dec. 14, 2012). FLSA collective action arises in 29 U.S.C. § 216(b), which states that "[a]n action . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and behalf of himself or themselves and other employees similarly situated."

District Courts in the 10th Circuit use the two-step approach established in *Thiessen v. General Electric Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001), to certify FLSA collective actions. *E.g.*, *Horne v. Scott's Concrete Contractor, LLC*, No. 12-cv-1445, 2013 WL 3713653, at *2 (D. Colo. July 16, 2013); *Dougherty v. Encana Oil & Gas (USA), Inc.*, 838 F. Supp. 2d 1127, 1132 (D. Colo. 2011); *Baldozier v. Am. Family Mut. Ins. Co.*, 375 F. Supp. 2d 1089, 1092 (D.Colo. 2005). In the first step (the "Notice Stage"), which occurs with little to no discovery, the Court makes an initial determination as to whether putative members of the collective action are "similarly situated." *Thiessen*, 267 F.3d at 1102. In order to meet the requirements of the Notice Stage, Plaintiffs need only make "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Bayles v American Med. Response of Colo., Inc.*, 950 F. Supp 1053, 1058 (D. Colo. 1996). Upon satisfying the Notice Stage requirements, the Court makes an initial determination finding the putative members similarly situated, and the parties proceed to discovery. *Thiessen*, 267 F.3d at 1102

After discovery concludes, the second step (the "Decertification Stage") occurs in which the defense moves to decertify the class that was previously certified during the first step. *Id*. at 1102-03. The Decertification Stage involves a more rigorous examination of the question as to whether the putative members of the collective action are similarly situated; the Court need not address Decertification Stage requirements at this juncture. *Id*. at 1103.

Here, as will be shown below, the standard for satisfying the Notice Stage strongly favors certification. In light of the lenient standard, Plaintiffs, through the allegations in the Complaint, this Motion, and the Affidavits and Depositions attached hereto, more than satisfy this standard and show that there are numerous other employees at the Call Center similarly situated to them. Accordingly, the Court should grant this Motion for Conditional Certification.

1. **Plaintiffs Burden at the First Step of the Certification Process is Minimal.**

As stated previously, the first step in the two-step process of certifying collective actions is the Notice Stage, where the plaintiff must show "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan." *Bayles*, 950 F. Supp 1033, 1058. All that is required is a "reasonable basis for [the plaintiffs'] . . . claim that there are other similarly situated employees. This is a lenient standard, which typically results in conditional certification of a representative class." *Dougherty*, 838 F. Supp. 2d 1127, 1132; *see also Stransky*, 2012 WL 6548108, at *4 ("The standard for certification at [the initial] stage is a lenient one."). It is important to note that during the Notice Stage, the court does not address the merits of the plaintiff's claim:

> Federal Rule of Civil Procedure 23—the rule governing class actions in general—is not applicable in the context 29 U.S.C. § 216(b). Therefore, the court will not reach the merits of plaintiff's claims on the motion for conditional certification, particularly when defendant's argument is more appropriately raised in a motion to dismiss or a motion for summary judgment.

> At the notice stage of certification, we need only consider the substantial allegations of the complaint and any supporting affidavits or declarations. . . .

*Stransky*, 2012 WL 6548108, at *4-5.

    2.    **Plaintiffs Have More Than Met their Burden of Showing They and the Putative Class Members Were Victims of a Single Policy Not to Pay Overtime Compensation.**

In ascertaining whether the plaintiff has satisfied the "lenient standard" for the Notice Stage, the court looks to the complaint, the motion for conditional certification, and any supporting affidavits and/or declarations submitted therewith. *Horne*, 2013 WL 3713653, at *3; *see also Stransky*, 2012 WL 6548108, at *5 ("Plaintiffs have preliminarily shown that they are similarly situated by pleading their allegations with sufficient specificity and by presenting declarations from current and/or former employees that support their allegations against Defendant.")  For example, in *Horne*, in support of their motion for conditional certification, the plaintiffs submitted affidavits stating the hours they worked and whether or not they were paid or partially paid for that work. *Horne*, 2013 WL 3713653, at *2.  Based on those affidavits, the allegations in the complaint, and the allegations in the motion for conditional certification, the court granted conditional certification concluding the plaintiffs were the "victims of a single decision, policy or plan . . . [of] fail[ing] to pay . . . overtime . . . ." *Id*. at *3.

Here, Plaintiffs' Complaint, this Motion, and the Affidavits and Depositions submitted in support hereof more than satisfies the minimal burden for conditional certification.  As in *Horne*, where plaintiffs supported their motion for conditional certification with affidavits stating the number of hours they worked, here Plaintiffs have alleged that they and the Putative Class Members are scheduled to work five (5) shifts per week; each shift being eight and one half (8.5) hours or nine (9) hours long with unpaid breaks of thirty (30) minutes or one (1) hour,

respectively. Complaint, ¶ 20; Exs. C-E, ¶ 6. As in *Horne*, where plaintiffs supported their motion for conditional certification with affidavits alleging unpaid overtime hours, here Plaintiffs further allege that (i) Defendant only pays Plaintiffs and the Putative Class Members for forty (40) hour per week regardless of how many hours they actually work, and (ii) that due to how long it takes their computers to "boot-up" and due to the work that customer calls generate, Plaintiffs estimate that they and the Putative Class Members work in excess of ten (10) minutes before each shift for which they were not compensated and further estimate that they and the Putative Class members were compelled to work in excess of ten (10) minutes through their breaks or after their shifts at least two (2) or three (3) times per week. Complaint, ¶ 20; Exs. C-E, ¶¶ 10, 15; Ex. F, 148:19-23, 152:6-14; Ex. G, 205:16. Finally, Plaintiffs allege that Defendant operated the Call Center under a specific Policy that necessitated Plaintiffs to work unpaid overtime. Exs. C-E, ¶¶ 15-17; Ex. G, 96:3-25; Ex. H, 42:1-43:20. ("[W]e were required to do off the clock work." Ex. F, 122:25-123:1, 126:3-6. "Managers told me to make sure my employees were ready to go at the start of their shift …. They said all applications had to be up and running, all resources had to be ready when they started their shift." Ex. H, 72:22 - 73:2.) Accordingly, Plaintiffs have met their burden at the Notice Stage and the motion should be granted.

## VI. Notice to Current and Former Customer Service Representatives

Under the FLSA, individuals deciding to opt in as plaintiffs must submit written consent to the Court. 29 U.S.C. § 216(b). Once the collective action is certified by the Court, Plaintiffs may notify potential members of the action via a court approved notice and consent forms. *Vaszlavic v Storage Tech. Corp.,* 175 F.R.D. 672, 681, (D. Colo 1997). The Court has a "managerial responsibility" to facilitate notice to potential claimants in an FLSA collective

action. *Hoffman-La Roche Inc. v. Sterling*, 493 U.S. 165, 110 S. Ct. 482, (1989). "In addition, plaintiffs are entitled to specific discovery to determine the names and addresses of the putative class members." *Vaszlavic*, 175 F.R.D. 672 at 682.

Authorization of the proposed notice is appropriate; the Putative Class Members meet the "similarly situated" standard, as discussed above. Plaintiffs have sufficient knowledge of the job duties of other Customer Service Representatives employed by Defendant and the operation of the Call Center to allege (i) that all Customer Service Representatives performed similar duties (Ex. F, 41:8-20; Ex. G, 107:13-21; Ex. I, 52:3-17), (ii) that other Customer Service Representatives were uncompensated for work done before shift, after shift, or during breaks (Ex. F, 125:8 – 126:6; Ex. G – 93:6-12), and (iii) that due to uncompensated work, other Customer Service Representatives worked more than forty (40) hours a week. (Exs. C-E, ¶¶ 15-17, Ex. H, 61:7-24). The foregoing satisfies any burden of proof for facilitation of Notice.

Therefore, Plaintiffs respectfully request that the Court authorize the Notice contained in Exhibit A and Consent Form in Exhibit B, and allow said Notice and Consent Forms to be sent to all current and former Customer Service Representatives employed by Defendant at any time during the last three years. Plaintiffs also respectfully request that their attorneys be allowed to disseminate Notice and Consent Forms both electronically via email and physically via first-class mail. Plaintiffs propose that class members interested in opting into the Action would be allowed to file consent within ninety (90) days of the mailing. Plaintiffs' notice is accurate, appropriate, and fair, and they request that it be approved for delivery to all potential plaintiffs.

### VII. Request that the Court Expedite Consideration of the Motion

The FLSA provides for a statute of limitations allowing potential claimants two (2) years to commence an action, or three (3) years in the case of a willful violation of the FLSA. Any

delay in the determination of this Motion results in a delay in the delivery of Notice and Consent Forms, which in turn results in a smaller window for any potential claimants and claims. Plaintiffs respectfully request that the Court expedite briefing and determination of this Motion.

## VIII.   Conclusion

For the foregoing reasons, Plaintiffs respectfully requests that this Court enter an Order:

a) Granting conditional certification of a collective action;

a) Directing Defendants to disclose the names, last known addresses, and email addresses of all current and former employees who worked as "Customer Service Representatives" at the Call Center within the three (3) year period preceding the filing of the Complaint in this Action on September 16, 2013;

b) Authorizing that notice be sent, pursuant to 29 U.S.C. § 216(b), to all similarly situated employees (Customer Service Representatives) so that they may opt into this Action should they wish to assert claims under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*. (Plaintiff proposes that the notice be written, in a form approved by the Court, and has attached a proposed notice as Exhibit "A"); and

c) For such further relief as this Court may deem just and proper.

## IX.   D.C. Colo LCivR 7.1(a) Compliance

Undersigned counsel has conferred with Nathan D. Chapman, Wargo & French LLP, counsel for Defendant, regarding this Motion and the relief requested herein. Defendant opposes this motion

[Signatures appear on the next page]

Dated: New York, New York
April 11, 2014

By:     s/ Walker G. Harman, Jr.
Walker G. Harman, Jr.
THE HARMAN FIRM, PC
*Attorneys for Plaintiffs*
1776 Broadway, Suite 2030
New York, New York 10019
Tel.: (212) 425-2600
Fax: (212) 202-3926
wharman@theharmanfirm.com

Ian D. Kalmanowitz
CORNISH & DELL'OLIO, P.C.
*Attorneys for Plaintiffs*
431 North Cascade Avenue, Suite 1
Colorado Springs, Colorado 80903
Tel.: (719) 387-8205
Fax: (719) 475-1264
ikalmanowitz@cornishanddellolio.com