IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-02521-RM-MJW

DENA M. CANNON,
JULIANA VAN TUIL, and
SUZANNA BOLDEN,
on behalf of themselves and others similarly situated,

Plaintiffs,

v.

TIME WARNER NY CABLE LLC,

Defendant.

---

**RECOMMENDATION ON**
**PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION OF A COLLECTIVE**
**ACTION UNDER THE FAIR LABOR STANDARDS ACT, 29 U.S.C. §216(b) AND FOR**
**COURT ASSISTED NOTICE UNDER AUTHORITY OF SPERLING V. HOFFMAN-LA**
**ROCHE, 493 U.S. 165 (1989)**
**(DOCKET NO. 84)**


**ORDER ON**
**DEFENDANT TIME WARNER NY CABLE LLC'S MOTION FOR LEAVE TO FILE**
**SURREPLY IN OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL**
**CERTIFICATION**
**(DOCKET NO. 98)**


**ORDER SETTING STATUS CONFERENCE ON OCTOBER 30, 2014, AT 10:30 a.m.**

---

**Michael J. Watanabe**
**United States Magistrate Judge**

Plaintiffs have all worked as customer service representatives at Defendant's call

center in Colorado Springs, Colorado.  They allege that they often worked off-the-clock

and without pay, due to Defendant's informal but nonetheless effective policies for

service-call efficiency—in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C.

2

§§ 201 *et seq.* (2012).  Plaintiffs wish to proceed as a "collective action" on behalf of as many customer service representatives as will join them, under 29 U.S.C. § 216(b).

As has become usual in these cases, the Court and the parties split discovery into two stages.  Stage 1 discovery is solely for determining whether Plaintiffs' allegations sufficiently establish a "similarly situated" class of potential opt-in plaintiffs for purposes of § 216(b).  If the Court finds that such a class arguably exists (based on the pleadings and stage 1 discovery), the Court will "conditionally certify" the collective action, court-approved notices will go out to that class of potential opt-in plaintiffs, and the parties will proceed to stage 2 "merits" discovery.  *Cf. Thiessen v. General Electric Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001) (explaining two-step certification process).

Plaintiffs have moved for conditional certification (Docket No. 84).  Judge Raymond P. Moore referred the question to this Court pursuant to 28 U.S.C. § 636(b) (Docket No. 99).  The Court assumes that the motion is treated as dispositive for purposes of 28 U.S.C. § 636(b).  *See, e.g.*, *Giuffre v. Marts Lake Lodge, LLC*, No. 11-cv-00028-PAB-KLM, 2012 WL 5199427 n.1 (D. Colo. Oct. 1, 2012).  The arguments of the parties have been considered, and to the extent not addressed herein, deemed moot or meritless.  The Court recommends that Plaintiffs' motion be GRANTED for the reasons set forth herein, subject to certain modifications to their proposed notice.

The Court SETS a status conference for October 30, 2014, at 10:30 a.m. at which the parties shall be prepared to discuss the status of the case and scheduling matters.

3

## Factual & Procedural Background

Plaintiffs allege that, when they worked at Defendants' call center, they were obligated to work without pay in two ways.  First, by the nature of the job, Plaintiffs needed to boot up their computers and load various customer-service applications before fielding calls.  But Plaintiffs say they were compelled to field calls immediately upon clocking in—and thus, they were effectively required to do their booting-and-loading while off-the-clock.  They allege it took an average of 20 to 30 minutes, every day (Complaint ¶¶ 23–31).

Second, Plaintiffs allege that they often received phone calls without interruption or downtime between calls; as a result, there was insufficient time for completing paperwork after each call.  Employees managed the workflow by finishing their paperwork after the phone calls stopped—i.e., after they clocked out for a meal break or at the end of a shift.  Plaintiffs allege that this amounted to an average of 45 minutes of unpaid work each week (Complaint ¶¶ 32–39).

As noted, discovery was bifurcated into a conditional-certification stage and a merits stage.  The first stage consisted of a four-month period of discovery limited to Plaintiffs' individual FLSA claims and whether they should be conditionally certified as a class.  Stage 1 is now completed.  Defendant has taken six depositions: all three named Plaintiffs, two opt-in Plaintiffs, and one third-party witness identified by Plaintiffs.  Both sides have served and responded to interrogatories and document requests, albeit with some difficulty getting along through the process.

In their deposition testimony, the five Plaintiffs and the third-party witness all conceded that Defendants' formal, written policies prohibited off-the-clock work and that

4

those policies also required timesheets to be accurate.  They also all conceded, with varying degrees of clarity and one exception, that they had never been explicitly told to work while off-the-clock.  However, the third-party witness and most of the Plaintiffs also testified that they did actually work while off-the-clock, that they were obligated to do so as a practical matter, and that this de facto obligation was imposed by the "metrics" or "scorecards" that Defendant uses for monitoring, compensating, and disciplining employees.

Plaintiffs now wish to conditionally certify the collective action and to send court-approved notices to potential opt-in plaintiffs (Docket No. 84).  They included as exhibits to their motion (1) a proposed notice, (2) a proposed opt-in form, (3) affidavits from two named Plaintiffs and one opt-in Plaintiff; (4) deposition transcripts from four of the depositions taken by Defendant; (5) opt-in forms for eleven opt-in plaintiffs, all of whom had previously filed their consent to join the case; and (6) a copy of the scheduling order entered by the Court last November.  Defendants filed a response in which they provided (1) exhibits and excerpts from depositions from other cases filed against Defendant by Plaintiffs' counsel (in an attempt to show bad faith on the part of Plaintiffs and their attorneys), and (2) exhibits and excerpts from all six depositions in this case.  Plaintiffs, in their reply, provided the Court with complete deposition transcripts and portions of the deposition exhibits.  Altogether, the motion, objection, and reply total about 1,548 pages, with exhibits.

On the apparent belief that those 1,548 pages failed to do justice to the topic, Defendant sought leave to file a surreply (Docket No. 98).  Plaintiffs objected (Docket No. 100), and Judge Moore referred the motion to this Court (Docket No. 103).  The

5

Court finds that Plaintiffs' reply did not raise new arguments or introduce previously

undisclosed evidence, and that Defendants' proposed surreply likewise includes no

arguments not already covered in detail in Defendants' original objection.  Accordingly,

the motion for leave to file a surreply is DENIED.

## Analysis

Judge Moore recently explained the legal framework for conditionally certifying a

collective action under FLSA:

> Section 216(b) of the FLSA authorizes private individuals to recover damages for violations of overtime provisions.  It provides in part:

>> An action to recover the liability [for unpaid overtime compensation, retaliation and liquidated damages] may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.

> 29 U.S.C. § 216(b).

> The FLSA requires that non-exempt employees be paid overtime compensation for time worked in excess of forty (40) hours in one work week.  29 U.S.C. § 207(a).  The minimum rate of compensation that an employer must pay a non-exempt employee for overtime work is one-and-one-half times the employee's hourly rate.  29 U.S.C. § 207(a)(1). . . .

> The Tenth Circuit has approved the use of a two-step process for determining whether putative class members are similarly situated to the named plaintiff.  In *Thiessen v. General Electric Capital Corp.*, the court outlined the case by case or "ad hoc" method as follows: at the first step, prior to discovery, the district court makes a "notice stage" determination of whether the plaintiffs are similarly situated.  267 F.3d 1095, 1105 (10th Cir. 2001).  For conditional certification at the notice stage, the Tenth Circuit "require[s] nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan."  *Id.* at 1102.  "The standard for certification at this stage is a lenient one."  *Baldozier v. Am. Family Mut. Ins. Co.*, 375 F. Supp. 2d 1089, 1092 (D. Colo. 2005).  At this stage, "a court need only consider the substantial allegations of the complaint along with any supporting affidavits or declarations."  *Smith v. Pizza Hut, Inc.*, No. 09-CV-01632-

6

CMA-BNB, 2012 WL 1414325 (D. Colo. Apr. 21, 2012) (quoting *Renfro v. Spartan Computer Servs., Inc.*, 243 F.R.D. 431, 434 (D. Kan. 2007)).

In the second stage, which comes at the conclusion of discovery and often in the context of a defense motion to decertify the class, the court applies a stricter standard of "similarly situated," including application of at least four factors, to determine whether the case can proceed as a class action. *Thiessen,* 267 F.3d at 1102-03; *Daugherty v. Encana Oil & Gas (USA), Inc.*, 838 F. Supp. 2d 1127, 1132-33 (D. Colo. 2011).

*Lysyj v. Milner Distribution Alliance, Inc.*, No. 13-cv-01920-RM-MJW, 2014 WL 273214, at *2–3 (Jan. 24, 2014).  The first, "notice" stage is a matter of facilitating notice to potential opt-in plaintiffs and conducting specific discovery for that purpose.  *See Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 164, 170–71 (1989).  It is at the second, "decertification" stage that courts consider the disparate factual or legal circumstances of individual plaintiffs and their claims, as well as fairness and procedural considerations.  *Thiessen,* 267 F.3d at 1103.

## I.    Conditional Certification of a Collective Action

Plaintiffs propose a notice group/collective action that the Court will describe as:

All employees with the title "Customer Service Representative" who were employed at the Time Warner NY Cable, LLC call center at 2221 E. Bijou St., Colorado Springs, Colorado 80909, from September 5, 2011 to present.

At the conditional-certification stage, the court looks only for "substantial allegations" that the proffered class of potential opt-in plaintiffs "were together the victims of a single decision, policy, or plan."  *Thiessen*, 267 F.3d at 1102.  The conditional-certification standard is intentionally designed to favor inclusiveness, to avoid prejudicing plaintiffs who have not yet had an opportunity to join the suit; the later decertification stage, by comparison, is designed to protect the defendant's interests.

*See Smith v. Pizza Hut, Inc.*, No. 09-CV-01632-CMA-BNB, 2012 WL 1414325, at *4 (D. Colo. Apr. 21, 2012).  Accordingly, provided the "substantial allegations" test is met, conditional certification is appropriate for purposes of notice to the plaintiffs and discovery.  Here, Plaintiffs have met that test, as to their proposed class.

The Court has found only one example of a motion for conditional certification under FLSA being denied in the District of Colorado: *Saarela v. Union Colony Protective Servs., Inc.*, No. 13-cv-01637-MSK-MJW, 2014 WL 3408771 (D. Colo. July 14, 2014).  There, Chief Judge Krieger identified three reasons why the plaintiff failed to qualify for conditional certification.  First, the plaintiff's complaint was "almost entirely conclusory in nature" and thus did not "set[] forth any 'substantial allegations' sufficient to carry Mr. Saarela's burden."  *Id.* at *3.  Second, although plaintiff's affidavit added factual detail, the only evidence it offered as to the existence of similarly situated employees were vague statements of hearsay from unidentified sources—such as "conversations with other security guards."  *Id.*  Moreover, plaintiff was evasive when it came to identifying such other potential plaintiffs during his deposition, and although he ultimately provided two names, those individuals did not timely provide corroborating affidavits.  *Id.*  Chief Judge Krieger gave these hearsay statements no weight in her analysis.  *Id.*  Third, although plaintiff alleged that his supervisor told him the company's policy was not to pay overtime, plaintiff also received his pay in a two-check system due to a loan he had taken.  *Id.*  The peculiar circumstances of the case's only named plaintiff placed his allegations as to the company's pay policy in an ambiguous light.  *Id.*  Collectively, the record was insufficient to constitute "substantial allegations that the putative class

members were together the victims of a single decision, policy, or plan" as required by

*Thiessen*.  *See id.*

 None of those three conditions apply here.  The Complaint itself is not conclusory

in any fashion; rather, it is pleaded with a high level of factual detail.  The allegations as

to the existence of other potential plaintiffs and of a de facto company policy are not

uncorroborated: there are three named plaintiffs and eleven opt-in plaintiffs in this case

already, and a third-party witness gave deposition testimony tending to support many of

Plaintiffs' allegations.  Finally, although each deposed plaintiff presents a slightly

different fact pattern, none are so idiosyncratically situated that their allegations become

ambiguous in light of their circumstances.  Rather, they all present the same basic

theory: due to Defendant's efficiency metrics and despite Defendant's formal written

policies, Plaintiffs were effectively compelled to work off-the-clock.

 Defendant makes a number of arguments to bar conditional certification, but as

will be discussed herein, each argument falls short.

### A. Whether the deposition testimony contradicts Plaintiffs' allegations

 Most importantly, Defendant argues that, during their stage 1 depositions, each

deponent gave testimony expressly contradicting the allegations in the Complaint and in

the three affidavits submitted by Plaintiffs.  As Defendant points out, courts have

refused to grant conditional certification where the plaintiffs' deposition testimony

contradicts their claims, *see, e.g.*, *Luksza v. TJX Companies*, No. 2:11-cv-01359-JCM-

GWF, 2012 WL 3277049, at *11 (D. Nev. Aug. 8, 2012), and it would be inappropriate to

grant Plaintiffs' motion based on patently false affidavits.  However, Defendant

mischaracterizes the deposition testimony.

9

For example, Defendant asserts that the third-party witness—Christopher McKitrick, who was Plaintiff Dena Cannon's supervisor—testified "that (1) he enforced [Defendant's] no-off-the-clock-work policy; (2) he 'never forced anyone to come in early'; (3) employees were 'never . . . told [or] . . . forced' to do so, and (4) employees who came in early to load programs were violating TNY's policies" (Docket No. 93, at 8). Defendant is right that McKitrick made each of these statements—but Defendant has taken these statements out of context. For example, while McKitrick did say he never forced his employees to arrive early for work, he did so while testifying that he "should have" and that he was "held accountable" when he failed to do so (Docket No. 84–8, at 60–62). Further, McKitrick's testimony was unequivocal as to the de facto policy alleged by Plaintiffs:

> Q    And there was certainly no requirement that they arrive early, correct?
>
> A    Requirement? It was not a written requirement that they arrive early.
>
> Q    And there was no requirement of any other kind that they arrive early, correct?
>
> A    There -- I need -- we need to talk about that for a minute. Was there a requirement that anyone arrive early? Is that what you're asking me?
>
> Q    I'm asking if there was ever a requirement that Miss Cannon arrive early.
>
> A    Every employee had to be ready to go at their scheduled start time.
>
> Q    Okay.
>
> A    What I mean -- what I mean by that is every employee had to have all their systems loaded on their computer, their phone set to the right mode. They had to have logged in. They had to have had resources ready when they start their shift.

10

(Docket No. 84–8, at 41–42).  Defendant's counsel pressed McKitrick on the contents of

Defendant's written policies, but McKitrick did not change his testimony:

> Q      All right. And if you'll turn with me to the page -- there are some numbers on the bottom right-hand corner of the page -- TWC 008186. Let me know when you're on that page.
>
> A      I'm there.
>
> Q      And the -- it says on the page, Employees are expected to perform -- this is the first full paragraph at the top of the page.  [] Employees are expected to perform their duties as scheduled. This means being at the assigned work location and workstation at the start of the shift, taking breaks and meal periods as scheduled, and working through the end of the shift.  Did I read that correctly?
>
> A      Yes, sir.
>
> Q      And it doesn't say you need to be early, right?
>
> A      It does not say here that you need to be early.
>
> Q      And it doesn't say that you need to have programs or -- or tools loaded here, does it?
>
> A      It does not say that, but you had to have that.
>
> Q      And you've already told me all of the reasons that you -- you think that that -- that -- that that -- strike that. Strike that. The -- the written policy right here does not say that you have to have programs or tools loaded, does it?
>
> MR. HARMAN: Objection.
>
> A      This -- this paragraph right here does not say that.
>
> Q      (By Mr. Chapman) Okay. That's it. Thank you. It says just to be at your workstation, correct?
>
> A      That's correct.
>
> Q      Okay.
>
> A      But being at your workstation on time would not make you available and ready to do your job.

11

Q     And you've never seen a written rule that says that, what you just
       said, have you?

A     I've never seen a written rule. You did, however -- I -- I mean, as
       best as I can describe, yes, sir, you're correct, there's not a written
       rule that says you have to be there early and load applications
       before you start. However, if you didn't, you weren't ready to take
       calls.

(Docket No. 84–8, at 57–58).  This testimony does not contradict Plaintiffs' allegations; it

supports them.

Defendant similarly mischaracterizes the deposition testimony of various

Plaintiffs.  As to named Plaintiff Juliana Van Tuil, for example, Defendant highlights her

admission, during her deposition, that there was no requirement for her to be at her

desk before the start of her shift (Docket No. 93, at 7).  But Van Tuil gave that answer

during a line of questioning about Defendant's *written* policies (Docket No. 84–7, at 18–

19).  Elsewhere in her deposition, Van Tuil was explicit that Defendant's *de facto*

policies were another matter, and she felt compelled to load programs before clocking in

to avoid being sanctioned by Defendant's performance and efficiency metrics (*see, e.g.*,

Docket No. 84–7, at 25–25, 29, 37–38, 43–44).  Likewise, Defendant argues that

named Plaintiff Suzanne Bolden testified that she was not required to be at her desk

before the beginning of her shift (Docket No. 93, at 7).  But the testimony Defendant

cites for this position states only that there was no *written* policy to that effect.  (Docket

No. 84–9, at 25).  In several other places in Bolden's deposition testimony, she states

the opposite, as to the *de facto* policy (Docket No. 84–9, at 16, 38, 41–42, 48).

This routine was played out in almost every deposition: Defendant's attorneys

would get Plaintiffs to confirm that Defendant's written policies were to the contrary of

Plaintiffs' claims, and that no one explicitly told Plaintiffs to work while off the clock; almost every Plaintiff, however, testified that as a result of Defendant's performance metrics, they were compelled as a practical matter to work while off the clock.

Defendant argues that the deposition testimony unequivocally establishes that Defendant had no policy requiring Plaintiffs to work while off the clock and that Plaintiffs' allegations are therefore demonstrably false.  Defendant is wrong.[1]  What the deposition testimony does do is raise a number of merits disputes that are best addressed on a motion to decertify, on a motion for summary judgment, or at trial.  At the conditional-certification stage, Plaintiffs need only show "substantial allegations" and some factual support for the idea that other potential plaintiffs have been harmed by the alleged policy.  The depositions Defendant conducted provide that support.

**B.      Whether Plaintiffs have dissimilar legal theories or defenses**

Defendant also argues that the Plaintiffs have too little in common to represent a class of similarly situated opt-in plaintiffs.  The case law on this point is unequivocal: it is a question to be raised on a motion to decertify, following merits discovery.  *Thiessen,* 267 F.3d at 1103; *Stransky v. HealthONE of Denver, Inc.*, No. 11-cv-02888-WJM-MJW, 2012 WL 6548108, at *5 (D. Colo. Dec. 14, 2012); *Gordineer v. Rocky Mountain*

---

[1] Defendant also repeatedly accuses Plaintiffs of perjury (among much other overheated rhetoric).  As to the perjury charge, Defendant plays a game of formalistic semantics: although Plaintiffs all admit in their depositions to receiving overtime pay, the three affidavits state that they were always paid for 40 hours of work.  But in context, the affidavits clearly refer to the specific unpaid overtime at issue in the lawsuit, not overtime in general.  Likewise, Plaintiffs' deposition testimony provides a great deal of detail about individual employees' tardiness and attendance problems—and while that raises questions about their work habits, it does not constitute perjury for their affidavits to state that office policy prohibited tardiness.  The affidavits can be fairly described as shoddy boilerplate.  But defense counsel would serve their client better if they focused on impeachment at trial rather than wasting this Court's time with breathless histrionics.

13

*Offender Mgmt. Sys.*, No. 12-cv-01212-JLK, 2013 WL 179327, at *3 (D. Colo. Jan 17, 2013).

Defendant cites a number of cases in which conditional certification was denied based on such second-stage considerations.  However, in each of those cases, the parties had progressed well into merits discovery by the time the notice-stage motion was brought, and the court therefore either applied an "intermediate" standard or simply skipped straight to the second stage.  *See, e.g.*, *Basco v. Wal-Mart Stores, Inc.*, No. Civ.A. 00-3184, 2004 WL 1497709, at *4 (E.D. La. July 2, 2004) ("Based on the foregoing, the Court will employ the two-step approach . . . .  However, in light of the substantial discovery that has occurred in this matter, the Court will consider the criteria for both the first and second steps in deciding whether it should certify this matter.").  Here, the Court and the parties bifurcated discovery into two stages, and merits discovery has not yet begun.  Accordingly, the heightened-standard cases cited by Defendant have no application here.

### C.    Whether Plaintiffs' counsel is proper class counsel

Defendant also alleges that Plaintiffs' counsel, The Harman Firm PC, has a conflict of interest barring it from representing opt-in plaintiffs in this case.  The Harman Firm has recently represented plaintiffs in three cases filed in this District against Defendant: (1) this action; (2) the action docketed under 1:13-cv-00158-RM-MJW, a class action for FMLA violations; and (3) the action docketed under 1:14-cv-00037-PAB-BNB, also a class action for FMLA violations.  In the second case, the Harman Firm has withdrawn from representing plaintiff on acrimonious terms, and that case is currently on

14

hold due to the parties' progress in settlement discussions (with new plaintiff's counsel).
The third case has settled and been closed, as of July 2014.

Defendant argues that the Harman Firm has two conflicts of interest.  First,
Defendant argues that the Harman Firm is not fit to be class counsel so long as it
represents more than one set of plaintiffs, in more than one case, against the same
defendant.  *See Lou v. Ma Labs., Inc.*, No. C 12-05409 WHA, 2014 WL 68605, at *2
(citing *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 856 (1999)).  However, this argument is
moot because the Harman Firm does not currently represent plaintiffs in more than one
action.  Second, Defendant argues that the Harman Firm has improperly "rolled" fees
from one of the other actions into this action, in violation of the rules of professional
conduct.  However, Defendant has not proven this to be the case; they've provided
evidence that such fee-shifting was part of the settlement negotiations in the action
docketed under 1:13-cv-00158-RM-MJW, but that settlement agreement was never
consummated and, indeed, the plaintiff and the Harman Firm parted ways as a result of
the negotiations.  There's no evidence that the fee-shifting actually occurred.  As a
result, the Court finds there is insufficient basis—for now—to believe that the Harman
Firm has a conflict of interest.  That said, the question can be revisited at the
decertification stage.

## II.    Court-Assisted Notice to Potential Plaintiffs

The Court recommends that the proposed notice be approved, as modified and
appended to this Recommendation and Order.  Plaintiffs are entitled to specific
discovery from Defendant, providing detailed identification and contact information for

all current and former Customer Service Representatives who worked at the Bijou

Street Call Center at any point since September 5, 2011.

Defendant objects to Plaintiffs' proposal to distribute the notices by both e-mail

and first-class mail.  The Court finds that Plaintiffs have not yet established the need for

e-mail service.  The Court therefore recommends that Plaintiffs' counsel be authorized

to serve the court-approved notices only via the U.S. Postal Service, be it by first-class

mail, certified mail, or registered mail.  Should Plaintiffs find that such methods are

ineffective, after making reasonable efforts, they may move the Court for permission to

use alternative methods of service.  *See, e.g.*, *Whittington v. Taco Bell of America, Inc.*,

No. 10-cv-01884-KMT-MEH, 2012 WL 1622457 (D. Colo. May 9, 2012).

Defendant objects to the sending of court-approved notices on the ground that

Plaintiffs' counsel have already "aggressively solicited" for potential plaintiffs and court-

approved notices would therefore be duplicative.  However, in *Hoffman-La Roche Inc. v.*

*Sperling*—the case creating and authorizing this court-approved-notice mechanism—

the Supreme Court explicitly approved such notices even where plaintiff had engaged in

a grassroots campaign and had already sent notices to a group of 400 potential

plaintiffs.  493 U.S. at 168–70.  Defendant has cited only one case in which the court

approved conditional certification but declined to send notices because they would be

duplicative: *Bernard v. Household Int'l, Inc.*, 231 F. Supp. 2d 433, 436 (E.D. Va. 2002).

In that case, though, the defendant had already provided plaintiffs with names and

contact information for the putative class, and plaintiffs' counsel had already invested in

advertisements and other solicitations.  *Id.*  Here, Defendant has shown, at most, that

Plaintiffs' counsel has distributed business cards and has engaged in a word-of-mouth

16

campaign facilitated by the individual Plaintiffs.  There is no showing that Plaintiffs'

counsel has engaged in anywhere near the level of solicitation as occurred in *Bernard*,

nor even the level that occurred in *Hoffman-La Roche* itself.  Defendant's objection on

this ground is misplaced.

Defendant requests, also, that a third-party administrator be used for sending the

notices, receiving the opt-in forms, and filing them with this Court.  Such requests have

been approved by this court before, *see In re American Family Mut. Ins. Co. Overtime

Pay Litigation*, No. 06-cv-17430-WYD-CBS, 2009 WL 248677, at *4 (D. Colo. Feb. 3,

2009), and the idea makes sense here too, given the deeply cantankerous relationship

between Plaintiffs' counsel and Defendant's counsel.  The Court recommends that a

third-party administrator be ordered, that Defendant pay 50% of the cost of such third-

party service, and that Plaintiffs pay the other 50%.

## Recommendation

**WHEREFORE**, based on the foregoing findings of fact and conclusions of law,

this Court **RECOMMENDS** that Plaintiffs' Motion for Conditional Certification of a

Collective Action Under the Fair Labor Standards Act, 29 U.S.C. §216(b) and for Court

Assisted Notice Under Authority of *Sperling v. Hoffman-La Roche*, 493 U.S. 165 (1989)

(Docket No. 84) be GRANTED, subject to the modifications noted above and the notice

language appended at the end of this Order.

## Orders

**WHEREFORE**, for the foregoing reasons, it is hereby **ORDERED** that:

- Defendant's Motion for Leave to File Surreply in Opposition to Plaintiffs'

  Motion for Conditional Certification (Docket No. 98) is DENIED; and

- The parties shall appear at a Status Conference on October 30, 2014, at 10:30 a.m. before Magistrate Judge Watanabe for purposes of reporting the then-current status of this case and discussion of scheduling merits discovery and motions deadlines.

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case.  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  The District Judge need not consider frivolous, conclusive, or general objections.  A party's failure to file and serve such written, specific objections waives de novo review of the recommendation by the District Judge, Thomas v. Arn, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. Makin v. Colo. Dep't of Corr., 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Date:  September 5, 2014                    */s/ Michael J. Watanabe*
      Denver, Colorado                    Michael J. Watanabe
                                   United States Magistrate Judge

**Notice to Customer Service Representatives Employed by
Time Warner NY Cable, LLC**

This is a Notice to all Customer Service Representatives who were employed by Time Warner NY Cable, LLC, at their call center at 2221 E. Bijou St., Colorado Springs, Colorado 80909, between September 16, 2010 and the present.

A lawsuit has been filed in the United States District Court, District of Colorado on behalf of Customer Service Representatives against Time Warner NY Cable, LLC alleging violations of the federal Fair Labor Standards Act and seeking to recover unpaid overtime wages and liquidated (double) damages.

Plaintiffs allege that they were not paid for work done before the start of shift, during shift breaks, and after the end of shift.  Defendant Time Warner NY Cable, LLC denies the allegations and believes that Customer Service Representatives are and were properly paid under the Fair Labor Standards Act.

Plaintiffs are represented by Walker G. Harman, Jr. of The Harman Firm PC, who may be contacted at (212) 425-2600.  Defendant is represented by Nathan Chapman of Wargo & French LLC, who may be contacted at (404) 853-1500.

If you were employed by Time Warner NY Cable, LLC as a Customer Service Representative between September 5, 2011 and the present, and you believe you may be due unpaid overtime, you may join in this action to recover unpaid wages by completing the enclosed Consent Form and mailing it to:

[Name and Address of Third-Party Administrator]

If you are a **current employee** of Time Warner NY Cable, LLC you may join in the lawsuit in order to recover unpaid wages and liquidated damages.  You are protected by federal law from any retaliation by Time Warner NY Cable, LLC and your employment will not be affected if you chose to join in this lawsuit.

You have 90 days from the date this notice is mailed to return the form to The Harman Firm PC for filing in this action.  **The statute of limitations will continue to run, reducing your claim, until the date the signed Consent Form is received by the Court.**

If you choose to join this lawsuit, you will be bound by the judgment and may be impacted by any settlement of the case.  The decisions and agreements made and entered into by Plaintiffs will be binding on you if you join this lawsuit.  If you choose to join this lawsuit, you may be required to respond to written requests for information and you may be required to produce documents for use in the lawsuit.  You may be required provide sworn testimony under oath at depositions, hearings, or trial, and you may be required to travel to Denver, Colorado to do so.  Further, if Plaintiffs lose the lawsuit, you may be required to pay a portion of the costs and attorneys' fees incurred by Defendant Time Warner NY Cable, LLC in defending the case.

If you chose to join in the lawsuit you may 1) represent yourself, 2) hire a lawyer of your choice, or 3) hire The Harman Firm, PC, 1776 Broadway #2030, New York, NY, 10019.

The Harman Firm will provide representation on a contingent fee basis, which means that your attorneys' fees will be paid from amounts collected by settlement or judgment and will be subject to approval by the Court.

**THIS NOTICE HAS BEEN AUTHORIZED BY THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO.**
**THE COURT HAS TAKEN NO POSITION IN THIS CASE REGARDING THE MERITS OF PLAINTIFFS' CLAIMS OR DEFENDANT'S DEFENSES.**