IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-02521-RM-MJW

DENA M. CANNON,
JULIANA VAN TUIL, and
SUZANNA BOLDEN,
on behalf of themselves and others similarly situated,

Plaintiffs,

v.

TIME WARNER NY CABLE LLC,

Defendant.

---

**REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO DECERTIFY FOR FAILURE TO PROVIDE COURT-ORDERED DISCOVERY, TO DISMISS CERTAIN OPT-IN PLAINTIFFS, AND FOR SANCTIONS (Docket No. 196)**

---

**Michael J. Watanabe**
**United States Magistrate Judge**

Pending before the Court, and referred to the undersigned by District Judge Raymond P. Moore, is Defendant's Motion to Decertify for Failure to Provide Court-Ordered Discovery, to Dismiss Certain Opt-In Plaintiffs, and for Sanctions. (Docket Nos. 196 & 197.) The Court has reviewed the parties' filings (Docket Nos. 196, 202, & 208); taken judicial notice of the Court's entire file for this case; and considered the applicable Federal Rules of Civil Procedure, statutes, and case law. Now being fully informed, the Court makes the following report and recommendation that the motion be granted in part and denied in part.

**Background**

The Court has noted before that the attorneys in this case have developed a "deeply cantankerous relationship." (Docket No. 104, p.16.) When it came time to

conduct a set of depositions in February and March, this cantankerous relationship did not help. Defendant noticed the depositions of ten opt-in plaintiffs, setting those depositions in a court-ordered window of two consecutive weeks. Of those ten, only four were successfully completed; three deponents failed to appear because they were unwilling to travel from outside the Denver metropolitan area; two deponents withdrew from the case rather than engage with their discovery obligations; and one failed to appear as scheduled, citing inclement weather. In the process, both sets of attorneys undoubtedly incurred a variety of costs that could have been avoided—if only they could get along with each other.

Defendant has now moved for steep sanctions, based on the deposition debacle and other discovery failures by Plaintiffs. Although the Court finds that the severest of Defendant's requested sanctions goes too far, the Court nonetheless finds that certain sanctions should be imposed, as explained below.

## **Findings of Fact**

The Court finds:

1. On November 11, 2014, Defendant's counsel began conferring with Plaintiffs' counsel on dates for the depositions of ten specific opt-in plaintiffs. Defendant asked for the depositions to take place in Colorado Springs, CO. At the same time, Defendant's counsel served its first set of written discovery requests. (Docket 196-2, p. 2.)

2. On December 4, 2014, the parties agreed (1) to extend Plaintiffs' deadline to respond to the written discovery; (2) to set depositions for the weeks of February 2, 2015, and February 23, 2015; and (3) that Defendant would select the particular opt-in plaintiffs to be deposed after receiving and reviewing their discovery responses. (Docket 196-2, p. 7.)

3. On December 12, 2014, Plaintiffs' counsel timely and reasonably clarified that while the target weeks for depositions were agreed to, the actual depositions could not be confirmed until deponents were selected and their individual

schedules consulted. However, Plaintiffs' counsel also unilaterally changed the agreed-upon weeks to the weeks of February 16, 2015, and February 23, 2015. (Docket 196-2, p. 13; Docket No. 202-4, p.2.)

4. On January 14, 2015—the day Plaintiffs' written discovery responses were due following the agreed-upon extension of time—Plaintiffs unilaterally declared that responses would not be forthcoming for another two or three weeks, and that depositions may need to be rescheduled accordingly. Although the geographic dispersion of the opt-in plaintiffs was referenced in this letter, it was referenced only with regard to written discovery and not with regard to depositions. (Docket 196-2, p. 15; Docket No. 202-4, p.4.)

5. On January 15, 2015, the Court held a status conference. The parties raised their difficulties with discovery; the Court ordered (1) that Plaintiffs provide written discovery responses no later than 5:00 p.m. Eastern Time on January 30, 2015; and (2) that the depositions of opt-in plaintiffs that Defendant sought be taken during the weeks of February 23, 2015, and March 2, 2015. (Docket No. 123.)

6. The parties conferred later that day; although the geographic dispersion of the opt-in plaintiffs was discussed, no specific objection was raised as to the locations or formats of depositions. (*See* Docket 196-2, p. 17; Docket No. 202-2 ¶¶ 4–5.)

7. On January 20, 2015, Defendant served ten deposition notices, including nine deponents who were previously identified in Defendant's November 11, 2014, letter. The depositions were set to proceed one per weekday from Monday, February 23, 2015, until Friday, March 6, 2015. Unlike Defendant's initial November proposal, the depositions were set to take place <u>in Denver, CO</u>. (Docket No. 196-2, pp. 20-49.)

8. On January 30, 2015, Plaintiffs' counsel served their responses to Defendant's first round of written discovery. The responses were deficient in several respects: they came nearly seven hours after the Court's 5:00 p.m. Eastern Time deadline; they did not include signed verifications as required by the Federal Rules of Civil Procedure; and the contents of the answers fell short in various substantive ways. (Docket No. 196-3, pp. 2, 4; *see also* Docket 196-3, pp.6-11.) Plaintiffs supplemented the responses—providing some but not all verifications, and providing some but not all of the information previously withheld. (Docket 196-3, pp.15-19.) Two opt-in plaintiffs elected to withdraw from the case rather than provide discovery requests; one of them, Plaintiff Mackey, was on the list of plaintiffs to be deposed. (*Id.*; *see also* Docket No. 183.) Defendant has not filed any motion to compel further responses to this written discovery.

9. On February 6, 2015, Defendant's counsel requested confirmation of the deposition dates noticed two and a half weeks earlier. (Docket No. 196-3, p.13.)

10. On February 13, 2015, Plaintiffs' counsel responded by:

    a. noting that Plaintiff Mackey's deposition notice was moot due to his pending withdrawal from the case;

    b. confirming the deposition dates for Plaintiffs Williams, Robinson, and Strange;

    c. asking that Plaintiff Vickers's deposition be rescheduled within the court-ordered window to accommodate the deponent's schedule,

    d. asking that Plaintiff Portalatin's deposition be rescheduled within the court-ordered window to accommodate counsel's schedule;

    e. objecting to the in-person depositions of Plaintiffs Roberts and Kimble because they reside outside of Colorado, and of Plaintiff Sandoval because he lives outside of Colorado's Front Range;

    f. noting that Plaintiff Garcia had been unresponsive.

    No specific objection is raised in this letter as to Denver being the place of deposition, but various references in the letter make clear that Plaintiff assumed the depositions would take place in Colorado Springs. (Docket No. 196-3, pp. 21-23; Docket No. 202-4, pp.6-7.)

11. On February 16, 2015, Defendant's counsel accepted that Plaintiff Mackey's deposition was moot; accepted the request to reschedule Plaintiff Vickers's deposition within the window; refused to reschedule Plaintiff Portalatin's deposition; and refused to consider alternative deposition formats or dates for Plaintiffs Roberts, Kimble, and Sandoval. (Docket No. 196-3, pp.25-26; Docket No. 202-4, pp.13-14.) Accordingly, at this point, Defendant had nine depositions noticed for the two-week span, with four of those depositions (Vickers, Williams, Robinson, and Strange) confirmed by Plaintiffs. The Court specifically finds that Defendant reasonably believed all nine depositions to be properly set.

12. After conferring with Defendant, Plaintiffs agreed to Denver as the place of deposition, but moved the Court for telephonic depositions of Plaintiffs Roberts, Kimble, and Sandoval. (Docket No. 186-3, pp.2-4; Docket No. 202-4, pp. 16-18; Docket No. 186.) The motion was filed on February 18, 2015—five days (three business days) before the first noticed deposition was set to begin. On February 19, 2015, the Court denied the motion, stating:

> In light of the collective nature of a FLSA action, it is often appropriate to limit the number of depositions and to use alternative formats to reduce the cost and burden of depositions. *See, e.g.*, *Forauer v. Vt. Country Store, Inc.*, 2014 WL 2612044 (D. Vt. June 11, 2014) (allowing all 25 plaintiffs to be deposed but ordering out-of-state plaintiffs to be deposed remotely). Here, however, Plaintiffs provide insufficient grounds for doing so. Given the comparatively limited number (10) of depositions currently scheduled, and limited number of out-of-state deponents (3), Defendant is well within its rights to insist on in-person depositions. *See generally Srebnik v. Dean*, Case No. 05-cv-01086-WYD-MJW, 2006 WL 2331014 (D. Colo. June 20, 2006) (ordering one deposition to take place remotely due to showing of extreme hardship; ordering remaining deposition[s] to be in person because "the remaining plaintiffs have failed to demonstrate extreme hardship").

(Docket No. 188.) The Court specifically finds that Defendant reasonably relied on this order in believing the three depositions at issue to be properly set.

13. Within a matter of hours, Plaintiffs informed Defendant that Plaintiffs Roberts, Kimble, and Sandoval would nonetheless not appear for their depositions. (Docket No. 196-3, pp. 32–33; Docket No. 202-5, pp.8–10.) Defendant offered to stipulate to dismissals, but Plaintiffs' counsel refused, and an angry e-mail exchange ensued. (Docket No. 196-3, p.36; Docket No. 196-4, pp.2–11; Docket No. 202-5, p.5–8.)

14. Plaintiffs' motion for telephonic depositions was filed the Wednesday before the two-week deposition period was set to begin. The Court denied it, and Plaintiffs determined to disregard the Court's order, on Thursday. On Friday, Plaintiffs' counsel stipulated that, for purposes of judicial relief (*i.e.*, this motion), Defendant Sandoval would be deemed a non-appearance at his Monday deposition. On Monday, Plaintiffs' counsel stipulated the same for Plaintiffs Roberts and Kimble, who had been set for deposition the following week. (Docket No. 196-4, pp.9, 19–20; Docket No. 202-5, pp.2–5.) Plaintiffs' counsel's conduct was unreasonably late and untimely.

15. On Monday, February 23, 2015, Plaintiffs' counsel informed Defendant that Plaintiff Garcia, a properly noticed deponent, would withdraw from the case rather than appear. (Docket No. 196-4, p.19; Docket No. 202-5, p.2.)

16. On Tuesday, February 24, 2015, Plaintiff Portalatin was deposed.

17. That same day, at about 8:00 p.m., Plaintiffs' counsel informed Defendant that Plaintiff Robinson could not appear for the following day's deposition but

could appear the following week. Defendant accepted the rescheduled deposition under protest. (Docket No. 196-4, pp.31, 33; Docket No. 202-5, pp.12–14.)

18. On Wednesday, February 25, 2015, Plaintiffs' counsel notified Defendant that a snowstorm was moving in and that Thursday's deponent, Plaintiff Williams, might have difficulty commuting from Colorado Springs to Denver as a result. (Docket No. 196-4, p.36; also Docket No. 202-5, p.12.) On Thursday, Plaintiff Williams did in fact fail to appear. (Docket No. 196-4, p. 41; Docket No. 202-5, p.16.) Plaintiffs' counsel offered to reschedule for the following day, a Friday on which no depositions were planned but on which Defendant's attorneys planned to return home for the weekend. Defendant's counsel refused to reschedule for Friday unless Plaintiffs paid for their flight changes and related costs, which Plaintiffs refused to do. (Docket No. 196-4, pp.46–49; Docket No. 202-6, pp.5–10.) Plaintiff Williams was never deposed.

19. The following week, from March 2, 2015, through March 4, 2015, Plaintiffs Strange, Robinson, and Vickers were deposed. (*See* Docket No. 202-6, p.12.)

20. On or about March 14, 2015, Plaintiffs provided a second round of written discovery responses. (*See* Docket 202, p.5.) On April 1, 2015, Plaintiff Garcia was dismissed. (Docket No. 201.)

The net result of the foregoing is that Defendant properly noticed ten depositions; one deposition was mooted early by Plaintiff Mackey's withdrawal from the case, but the other nine were reasonably believed to be going forward. Of those nine, three plaintiffs failed to appear despite a specific Court order directing them to appear in person. One further plaintiff withdrew rather than appear, but did so in an unreasonably untimely manner. And one further plaintiff failed to appear due to inclement weather.

## **Discussion**

Defendant now moves for a variety of sanctions. First, Defendant argues that the course of depositions, in light of Plaintiffs' concurrent failure to honor their written discovery obligations, reflect such an inability or unwillingness to manage this collective action that the case should be decertified and all opt-in plaintiffs thus dismissed without

prejudice.  Second, Defendant argues that the plaintiffs who failed to appear for properly noticed depositions as originally scheduled—Plaintiffs Roberts, Kimble, Sandoval, Williams, and Robinson—should be dismissed with prejudice.  Third, Defendant asks that Plaintiffs be ordered to reimburse its fees and expenses.

## I.      Decertification

When the Supreme Court established the "conditional certification" process for collective actions under the Fair Labor Standards Act, it expressly noted that courts have "considerable authority" to manage collective litigation.  *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 173 (1989).  But the undersigned has found no example of any court actually decertifying a collective action as a sanction—for discovery violations or otherwise.  Further, there are over 70 opt-in plaintiffs in this case (*see* Docket No. 195), and decertification would severely prejudice a number of opt-in plaintiffs who have, as of yet, done nothing wrong.  Finally, although Plaintiffs have not fastidiously honored their obligations as to written discovery, their conduct (as to written discovery specifically) has not fallen far outside the norm for difficult litigation—and Defendant has not yet filed any motion to compel discovery.  The Court recommends that Defendant's request for decertification be denied.

## II.     Dismissal

As explained by the Tenth Circuit's leading case on discovery sanctions:

> Rule 37(b)(2)(C) of the Federal Rules of Civil Procedure permits a court to issue "[a]n order . . . dismissing the action" "[i]f a party . . . fails to obey an order to provide or permit discovery."  Determination of the correct sanction for a discovery violation is a fact-specific inquiry that the district court is best qualified to make.  Therefore, we review the district court's decision to dismiss for discovery violations under an abuse of discretion standard.

> At the outset, we recognize that dismissal represents an extreme sanction appropriate only in cases of willful misconduct. In many cases, a lesser sanction will deter the errant party from further misconduct. Because dismissal with prejudice defeats altogether a litigant's right to access to the courts, it should be used as a weapon of last, rather than first, resort.
>
> The district court's discretion to choose a sanction is limited in that the chosen sanction must be both just and related to the particular claim which was at issue in the order to provide discovery. Before choosing dismissal as a just sanction, a court should ordinarily consider a number of factors, including: (1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; . . . (3) the culpability of the litigant, (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions. Only when the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on their merits is dismissal an appropriate sanction.
>
> These factors do not constitute a rigid test; rather, they represent criteria for the district court to consider prior to imposing dismissal as a sanction. The court should ordinarily evaluate these factors on the record.

*Ehrenhaus v. Reynolds*, 965 F.2d 916, 920–21 (10th Cir. 1992) (most internal citations, quotation marks, and alterations omitted). Further, Federal Rule of Civil Procedure 41 authorizes dismissal for failure to comply with court orders. Fed.R.Civ.P. 41(b).

The Court finds that the *Ehrenhaus* factors weigh in favor of dismissal of Plaintiffs Roberts, Kimble, and Sandoval. The prejudice to Defendant is clear: these plaintiffs have not only refused to be deposed within the court-ordered window and in the court-ordered format, but have also indicated that they will not, at any point, appear at an in-person deposition in Colorado. In behaving this way, these plaintiffs have ignored two court orders, despite numerous reminders from the Court of their discovery obligations. (*See* Docket No. 208, pp. 6–7 (listing the Court's statements to plaintiffs as to discovery obligations).) Plaintiffs' failure has been willful and flagrant—having formally announced

that they would not appear only hours after the Court's order directing them to do so. (Docket No. 196-3, pp. 32–33; Docket No. 202-5, pp.8–10.) In the face of such patent intransigence, no sanction other than dismissal can be appropriate.

The Court does not find that dismissal is warranted as to Plaintiffs Robinson or Williams. Defendant Robinson appeared for her deposition within the court-ordered window and appears to have a valid excuse for rescheduling at the last minute. (*See* Docket No. 196-4, pp.31, 33; Docket No. 202-5, pp.12–14.) Plaintiff Williams also had a viable reason to reschedule; Defendant underestimates the hazards of commuting from Colorado Springs to Denver in a snowstorm. While Defendant reasonably refused to reschedule its Friday flights at the last minute, Defendant could have accommodated Defendant Williams's deposition the following week—either in an afternoon (since almost all of these depositions were half-day depositions), or on Thursday, March 5th. To be clear, Defendant's conduct was reasonable under the circumstances. But it is difficult to conclude that Plaintiff Williams's failure to appear so prejudiced Defendant that dismissal is warranted.

The Court therefore recommends that Plaintiffs Roberts, Kimble, and Sandoval be dismissed with prejudice, but not Plaintiffs Robinson or Williams.

## III. Fees & Costs

Finally, Defendant requests an award of costs and fees. The Court agrees. Plaintiffs raise a number of objections, but each one falls short of the mark.

First, Plaintiffs insist that Defendant was on notice that Plaintiffs Roberts, Kimble, and Sandoval were remotely located, and that Defendant was therefore unreasonable and obstinate in insisting on in-person depositions in Denver. But the Court has already

ruled that Defendant was within its rights to so insist. (Docket No. 188.) And even if Defendant were on notice earlier in this case that these plaintiffs were not located in Denver or Colorado Springs, it was not until February 13, 2015, that Plaintiffs specifically objected to the place and format of the depositions. This is late and untimely—and Plaintiffs' requested relief was promptly denied by the Court. Defendant was entitled to rely on that order, and to stand on its proper and valid deposition notices. Further, the record before the Court shows that Plaintiffs never offered to reschedule these depositions, producing the remote plaintiffs in Denver (in compliance with the Court's order) at a date more convenient to those plaintiffs. Rather, Plaintiffs offered a blanket refusal to produce the deponents. Plaintiffs have noted that they were not authorized by Plaintiffs Roberts, Kimble, and Sandoval to dismiss them from the action. But this only highlights Plaintiffs' counsel's lack of diligence. The discussions concerning these depositions began in November 2014. It was not until February 2015 that Plaintiffs informed anyone that these plaintiffs would refuse to appear in Denver for depositions. Plaintiffs' counsel should have acted earlier.

Next, Plaintiffs argue that Defendant was unreasonable in setting these depositions in Denver rather than Colorado Springs. But Plaintiffs did not object to this; indeed, they agreed to it. (Docket No. 186-3, pp.2-4; Docket No. 202-4, pp. 16-18.) Plaintiffs also argue that most of the depositions were never confirmed. But they *were* properly noticed, and Plaintiffs filed no motions (other than the motion for Plaintiffs Roberts, Kimble, and Sandoval) for protective orders.

Finally, Plaintiffs disavow any responsibility for the weather, as to Plaintiff Williams's deposition. Under ordinary circumstances, the Court might agree. But in

these circumstances, Plaintiffs are not entitled to any benefit of the doubt. A predictable hiccup like this might have been easily accommodated had it not been for the rest of Plaintiffs' conduct.

Accordingly, the Court finds that an appropriate sanction is (1) that Plaintiff Williams's deposition be re-set for a date that is convenient to the parties, in Denver, with Plaintiffs to cover all costs including Defendant's travel costs (but not attorneys' fees); (2) that Plaintiffs reimburse Defendant for 50%[1] of Defendant's costs including travel costs (but not attorney's fees) for the depositions of February 23, 2015, through February 27, 2015, as well as all flight-change fees and related costs for the entire two-week period; and (3) that Plaintiffs pay Defendant's reasonable and necessary costs and attorneys' fees as to this motion.

**Recommendation**

For the foregoing reasons, the Court RECOMMENDS that:

- Defendant's Motion to Decertify for Failure to Provide Court-Ordered Discovery, to Dismiss Certain Opt-In Plaintiffs, and for Sanctions (Docket No. 196) be GRANTED IN PART and DENIED IN PART;
- Defendant's request for decertification of the collective action be DENIED;
- Plaintiffs Roberts, Kimble, and Sandoval be DISMISSED WITH PREJUDICE;
- Defendant's request to dismiss Plaintiffs Robinson and Williams be DENIED;

[1] The Court finds 50% to be appropriate because, out of four deposition days, one deposition proceeded as planned and another was mooted by Plaintiff Garcia's withdrawal from the case. While Plaintiffs can be faulted for the untimely withdrawal, the failed deposition nonetheless did not prejudice Defendant—it redounded to Defendant's benefit. Thus, out of four deposition days, only two failed to Defendant's detriment.

- Plaintiff Williams's deposition be RE-SET, with Plaintiffs to cover all costs including Defendant's travel costs (but not attorneys' fees); and
- Defendant be AWARDED costs and fees as set forth above.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives de novo review of the recommendation by the District Judge, Thomas v. Arn, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. Makin v. Colo. Dep't of Corr., 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Date: May 7, 2015
Denver, Colorado

*/s/ Michael J. Watanabe*
Michael J. Watanabe
United States Magistrate Judge