IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-02521-RM-MJW

DENA M. CANNON,
JULIANA VAN TUIL, and
SUZANNA BOLDEN,
on behalf of themselves and others similarly situated,

Plaintiffs,

v.

TIME WARNER NY CABLE LLC,

Defendant.

---

**ORDER DENYING DEFENDANT'S MOTION TO COMPEL FURTHER DEPOSITION
TESTIMONY FROM OPT-IN PLAINTIFF CYNTHIA VICKERS (Docket No. 199)**

---

**Michael J. Watanabe**
**United States Magistrate Judge**

Pending before the Court, and referred to the undersigned by District Judge

Raymond P. Moore, is Defendant's Motion to Compel Further Deposition Testimony

from Opt-In Plaintiff Cynthia Vickers.  (Docket Nos. 199 & 200.)  The Court has

reviewed the parties' filings (Docket Nos. 199, 207, & 209); taken judicial notice of the

Court's entire file for this case; and considered the applicable Federal Rules of Civil

Procedure, statutes, and case law.  Now being fully informed, the Court makes the

following findings of fact, conclusions of law, and order denying the motion.

<u>**Discussion**</u>

Defendant argues that (1) Plaintiffs' counsel improperly coached Opt-In Plaintiff

Cynthia Vickers to alter her testimony during a break in a deposition, and (2) as a result,

various sanctions should be imposed, including a re-deposition of Ms. Vickers for the purpose of establishing what her attorneys told her during the deposition break.

It is undisputed that Plaintiffs' counsel engaged in a conversation with the deponent during a break in deposition testimony.  It goes without saying that attorneys are not allowed to counsel witnesses into changing their testimony, during depositions or otherwise.  *Cf. Chassen v. Fidelity Nat. Title Ins. Co.*, 2010 WL 5865977 (D. N.J. July 21, 2010) (where deponent's counsel admitted discussing testimony with witness during break in deposition, deposing attorney entitled to inquire into the discussion).  *But see McKinley Infuser, Inc. v. Zdeb*, 200 F.R.D. 648 (D. Colo. 2001) (questioning the validity of the precedent relied upon in *Chassen*, *Hall v. Clifton Precision*, 150 F.R.D. 525 (E.D. Pa. 1993)).  But there is no bar on attorney consultation with a client during the client's deposition, as a general matter—so long as no question is pending.  *See, e.g.*, *McKinley Infuser*, 200 F.R.D. 648, 650.  Here, for the following reasons, Defendant has failed to show any reason for suspicion.

Defendant's case is premised on the following interpretation of events: (1) Ms. Vickers testified to certain facts; (2) during a break in the deposition, Ms. Vickers conferred with her attorneys; then (3) Ms. Vickers testified to the exact opposite facts. Indeed, this would be a damning sequence of events—if it happened.  But it did not. The bulk of Ms. Vickers's testimony *prior* to the break is fully consonant with her testimony *after* the break.  Defendant's argument to the contrary cherry-picks snippets of testimony.

To provide context: The dispute in this case is whether the plaintiffs (call-center workers) were lawfully compensated for time spent working off the clock.  According to

plaintiffs, while the company's official policy forbade such off-the-clock work, *de facto* policy compelled it.  The alleged off-the-clock work came in two varieties: (1) loading up programs before logging into one's computer so that one could begin fielding calls promptly upon logging in; and (2) wrapping up paperwork off the clock, either on break or at the end of one's shift, so that one could complete more calls while on the clock. Faced with these claims, Defendant's depositions focus on establishing that (1) the plaintiff did *not* in fact work off the clock, in either of those two fashions, and (2) if the plaintiff did so, such conduct was knowingly contrary to company policy.

Against this background, the following colloquy appears in Ms. Vickers's deposition:

> Q.   We have just reviewed records spanning two years, and we can go through the third year of records if you want but would it be a fair statement to say that you regularly came in between less than five to seven minutes prior to your shift to clock in?
>
> MR. LAIRD: Objection.  You can answer.
>
> A   I do not quite agree with that.
>
> Q   Okay.  Well, why don't you agree with that based on the records that we have reviewed?
>
> A   And, again, because of the positions that I held.
>
> Q   So in the positions that you held as a tier one rep, a tier three rep and a help desk rep allowed you to come in within those time frames to get punched in?
>
> MR. LAIRD: Objection.  You can answer.
>
> A   Most of the times even if you were in your documents to proceed with, your job was not loaded.  So the clocking in part is easy. It is the loading of the applications that you have to use in order to proceed with your job.

4

Q       I got it.  But you get in and you clocked in is the easy part and the
        hard part is loading the programs after you get clocked in, correct?

A       Correct.

Q       That is what you are claiming in this case, correct?

A       Correct.

Q       All right. And so when you would get in and you would clock in and
        the first thing that you would do is start loading programs, correct?

A       Correct.

(Docket No. 199-2, 58:11-59:19.)  Minutes later, the point continues:

Q       So each day when you came in and you would have to unlock the
        computer, load the timekeeping system first, punch in and then
        start loading your programs, correct?

            MR. LAIRD: Objection.  You can answer.

A       Depending on what time of the season our year was.  Again, our
        time systems changed.  At one point we could clock in on the
        phone.  We had a physical phone that we could log-in on.

Q       Okay.

A       And then they changed it to the system where we clock in on the
        computer?

Q       Okay.

A       So then it became a bigger hassle because in loading up your
        computer, that part has to load up even before you clock in.

Q       Right. Okay.

A       So that is the first thing that you hit to load in.  Me being in the
        position that I am in now, they allow time for me. So even if I get in
        and I load my system up and you have to be there at noon, I can
        clock in, but I can go in a special mode where I do not take calls.
        For most agents it is either ready or not. So you are either in or you
        are not in.

Q     Okay. So you can go in and you can get into the -- you can clock in
      and put yourself in an aux state that does not allow the calls to
      come in and then load all of your systems up and you are ready to
      go?

A     Correct.

Q     I got you.

A     May I clarify a little bit more on that situation?

Q     Yes. What exactly do you want to clarify?

A     In tier one or tier three you don't have those options of going into
      another aux when you have to do the work.

(Docket No. 199-2, 61:13-62:25.)  Defendant points to the portion of these discussions

in which Ms. Vickers affirmed that "clocking in was the easy part" to show that she

disclaimed ever loading programs before clocking in.  But in context, her testimony was

clear that she sometimes did so, and sometimes did not—and that the differences can

be attributed to different "tier" jobs that she held at different times, and different log-in

systems used by Defendant at different times.  Moreover, immediately before her

purported concession, she explicitly disclaimed the exact conclusion Defendant wishes

to draw.  In context, Defendant has selected two or three lines of testimony, and left out

dozens of others.  To be sure, Ms. Vickers was clearer on this point following the break

in the deposition.  But her testimony *after* the break was consistent with the bulk of her

testimony *before* the break, and consistent with any fair reading of her entire testimony.

Upon scrutiny, Defendant's other supposed contradictions meet the same fate.

Take this example:

Q     So at the end of the day, the last thing you would do is clock out of
      the timekeeping system and hit the restart button?

A  Yes.

Q  And then you would leave the call center?

A  Yes.

(Docket No. 199-2, 61:6-11.)  Defendant argues that this is an admission that Ms.

Vickers never stayed late, after clocking out, to wrap up paperwork.  And taken out of

context, that would seem to be true.  But in context, the colloquy was about whether Ms.

Vickers usually rebooted her computer or simply logged out with control-alt-delete; the

questions shown here rephrased her testimony—adding a detail about clocking out that

she hadn't herself said—to which she then answered "yes."  (*See* Docket No. 199-2,

60:21-61:5.)  It might well be that Ms. Vickers caught the added detail and intentionally

affirmed it.  But in other places in her testimony (*before* the deposition break) she

testified at length that she did finish paperwork after clocking out.  (Docket No. 199-2,

65:9-68:17.)  To the extent Ms. Vickers testified, after the deposition break, that she

finished up paperwork off the clock, it did not represent a change in her testimony.

  None of Defendant's other points have any greater validity.  As a result,

Defendant has wholly failed to show that Ms. Vickers's testimony actually changed in

any appreciable way following her discussion with counsel.  The Court will therefore

decline to infer that Plaintiffs' counsel improperly coached the witness.

  As a final note, the Court acknowledges that the deposition presents various

inconsistencies of a less dramatic nature and may be useful on cross-examination at

trial.  But this is not the first time Defendant has misrepresented the content of a

deposition by cherry-picking bits and pieces of testimony, and it is also not the first time

Defendant's dramatic rhetoric has exceeded the merits of its position.  (*See* Docket No.

104, pp. 8–12 & n.1.)  Under such circumstances, the Court finds that Defendant should pay Plaintiffs' reasonable and necessary attorneys' fees and costs for having to defend this motion.

## **Order**

It is hereby ORDERED that:

- Defendant's Motion to Compel Further Deposition Testimony from Opt-In Plaintiff Cynthia Vickers (Docket No. 199) is DENIED; and

- Defendant shall pay Plaintiffs' attorneys' reasonable and necessary fees and costs as to this motion (Docket No. 199).  The parties shall forthwith meet and confer to see if they can agree upon the attorneys' fees and costs.  If the parties can agree, then they shall file their stipulation with the Court on or before May 22, 2015.  If they parties cannot agree, then Plaintiff shall file its itemized affidavit for attorneys' fees and costs with the Court on or before May 22, 2015, with briefing to follow pursuant to D.C.COLO.LCivR 7.1(d).


Date:  May 7, 2015                                    /s/ Michael J. Watanabe
       Denver, Colorado                              Michael J. Watanabe
                                                     United States Magistrate Judge