**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.: 13-CV-2521-RM-MJW

DENA M. CANNON, JULIANA VAN TUIL, and SUZANNE BOLDEN,
on behalf of themselves and others similarly situated,

Plaintiffs,

v.

TIME WARNER NY CABLE LLC,

Defendant.

---

**JOINT MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT AND AWARD OF ATTORNEYS' FEES**

---

## I. INTRODUCTION

Plaintiffs Dena M. Cannon, Juliana Van Tuil, and Suzanne Bolden (collectively, "Named Plaintiffs"), individually and on behalf of the participating members of the putative class ("Opt-In Class Members") (together, with Named Plaintiffs, "Plaintiffs" or the "Settlement Group"), and Defendant Time Warner NY Cable LLC ("TNY" or "Defendant," collectively, the "Parties"), hereby move this Court for approval of the Settlement Agreement attached hereto as Exhibit A. As set forth in detail below, the Parties respectfully request that the Court review and approve the terms of the proposed settlement of this action as a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), as well as the proposed apportionment of the settlement proceeds, which is fair, reasonable, and adequate.

## II. BACKGROUND

On September 16, 2013, the Named Plaintiffs filed this lawsuit under the FLSA and Colorado law to recover allegedly unpaid overtime compensation. (ECF No. 1 ¶¶ 2-3.) The Named Plaintiffs allege that they were required to work "off the clock" prior to the start of their shifts, during breaks, during lunch, and after the end of their shifts. (*Id.* ¶¶ 22-45.)

On October 11, 2013, TNY answered the complaint and denied each of Plaintiffs' claims and also denied that this case is appropriate for treatment as a collective action. (ECF No. 22, *passim*.) TNY contends it has complied at all times with the FLSA, including by properly paying its customer service representatives for all hours worked. (*Id.*)

On October 6, 2014, the Court conditionally certified this case as a collective action through its Order on Recommendation on Plaintiffs' Motion for Conditional Certification. (ECF No. 106.) To date, the Parties have engaged in substantial discovery, including extensive written discovery and nine depositions. (*See, e.g.*, ECF No. 196 at 3-12.)

During April and May 2015, the Parties engaged in settlement negotiations that resulted in a Settlement Agreement that resolves all of their differences. The Settlement Group consists of 76 current and former TNY customer service representatives out of a putative class of over 1,400 current and former customer service representatives. The Settlement Agreement provides relief to each member of the Settlement Group that satisfies the potential value of his or her minimal, disputed claims.

## III. ARGUMENT

### A. Legal Standard for Settlements of FLSA Actions.

In order for an employee (or former employee) and an employer to settle a claim for unpaid overtime wages under the FLSA, the parties must move the District Court for its review and approval of the settlement. *Baker v. Vail Resorts Mgt. Co.*, No. 13-cv-01639-PAB-CBA, 2014 WL 700096, at *1 (detailing process for approving FLSA settlement) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982)). Before approving the settlement, the Court must determine that the terms are "fair and reasonable," which requires the Court to find that "(1) the litigation involves a bona fide dispute, (2) the proposed settlement is fair and equitable to all parties concerned, and (3) the proposed settlement contains a reasonable award of attorneys' fees." *Id.* As discussed below, each of these factors favor a finding that the proposed settlement here is fair and reasonable, and the Court should therefore approve the settlement.

### B. The Settlement Is A Fair and Equitable Resolution Of A Bona Fide Dispute.

1. <u>A Bona Fide Dispute Exists.</u>

To demonstrate the existence of a bona fide dispute, the parties must present: "(1) a description of the nature of the dispute; (2) a description of the employer's business and the type of work performed by the employees; (3) the employer's reasons for disputing the employees' right to a minimum wage or overtime; (4) the employees' justification for the disputed wages; and (5) if the parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wage." *Id.* (internal citation omitted).

TNY is a provider of telecommunications and cable products and services. Plaintiffs worked in TNY's Colorado Springs call center as customer service representatives. (ECF No. 1

¶¶ 5, 7, 13, 15, 19.) Customer service representatives are responsible for answering calls from customers and responding to any questions or concerns they may have regarding TNY's products and services. Customer service representatives are paid an hourly wage plus overtime compensation for any time worked in excess of 40 hours per week. (*Id.* ¶ 19.)

Plaintiffs contend that they were required to spend time preparing their computers prior to the beginning of their scheduled shifts so that they would be able to accept customer calls immediately when their shifts began. (*Id.* ¶¶ 23-29.) Plaintiffs also contend that they were required to complete work orders on customer accounts during unpaid breaks and after their shifts ended. (*Id.* ¶¶ 32-45.) Plaintiffs further contend that they were not allowed to clock in prior to the start of their shifts, were required to clock out during their breaks, and were required to clock out at their scheduled shift end time. (*Id.* ¶¶ 26, 32-33, 40.) Thus, Plaintiffs claim they were not paid for the time spent preparing their computers or completing work orders. (*Id.* ¶¶ 22, 30-31, 38-39, 45.)

TNY denies that Plaintiffs were ever required or permitted to work off-the-clock preparing their computers, completing work orders, or otherwise. (ECF No. 22, *passim*.) TNY's policies explicitly prohibit any hourly employee from performing work during times for which he or she is not being compensated. (*Id.* at 13.) TNY further denies that Plaintiffs are entitled to any relief because, to the extent Plaintiffs performed purported off-the-clock work, TNY was unaware of it. Further, the time periods for which Plaintiffs allegedly were not paid are *de minimis* and, therefore, not compensable as a matter of law. (*Id.* at 11-12.) Thus, there is a significant dispute as to: (1) whether Plaintiffs ever performed off-the-clock work; (2) whether Plaintiffs were ever required or encouraged to work off-the-clock; (3) whether TNY had any

knowledge of Plaintiffs' alleged off-the-clock work; (4) the amount of such off-the-clock work if it occurred; and (5) whether Plaintiffs' purported off-the-clock work was *de minimis* and therefore not compensable. TNY would therefore defend against Plaintiffs' FLSA claims on these substantial bases and others if this case was litigated further.

Additionally, if this case were litigated further, TNY would seek the dismissal of the numerous members of the Settlement Group who failed to comply with their discovery obligations in this action. These failures include violations of the Court's Orders regarding discovery (including the Court's Orders regarding depositions and interrogatory responses, ECF Nos. 123, 188, & 198), failing to respond to attempts to secure written discovery responses, and failing to provide verifications for interrogatory responses.

Thus, given the above, the Court should conclude that a bona fide dispute exists between the Parties.

2. The Proposed Settlement Is Fair And Reasonable.

There are several factors for the Court to consider when evaluating the fairness of a settlement: (1) whether the parties fairly and honestly negotiated the settlement; (2) whether serious questions of law and fact exist which place the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted litigation; and (4) the judgment of the parties the settlement is fair and reasonable." *Baker*, 2014 WL 700096, at *2 (internal citation omitted).

*a. The Parties Fairly and Honestly Negotiated the Settlement.*

This Litigation has been ongoing for almost two years and both Parties conducted significant discovery prior to engaging in settlement negotiations during April and May 2015.

The proposed Settlement Agreement is the product of extensive settlement negotiations between Plaintiffs, represented by Walker G. Harman, Jr., Edgar Rivera, and Owen Laird of The Harman Firm, P.C., ("Class Counsel") and TNY, represented by Michael D. Kabat, Joseph W. Ozmer II, Nathan D. Chapman, and Anthony E. Giardino of Wargo & French LLP, and Josh A. Marks of Berg Hill Greenleaf & Ruscitti LLP.

There was no fraud or collusion between the Parties. Rather, the settlement was the product of an arms-length negotiation by experienced counsel and has the effect of (1) providing relief to Plaintiffs and (2) eliminating the inherent risks both sides would bear if this litigation continued to a resolution on the merits. Thus, the Court should find that the parties fairly and honestly negotiated the settlement.

*b. Serious Questions of Law and Fact Exist and the Value of Immediate Recovery Outweighs the Mere Possibility of Future Relief.*

Given TNY's defenses as described above and the discovery failures on the part of the Settlement Group, the Court should also find that there are serious questions of law and fact that place the outcome of this litigation in significant doubt and that the value of immediate recovery outweighs the mere possibility of future relief. Indeed, the Parties disagree about the merits of Plaintiffs' claims, the viability of TNYs' defenses, and the proper calculation of damages (if any). Further, the Parties disagree about whether this case is appropriate for collective treatment. Given these differences, the Parties face the prospect of a prolonged and hotly-contested litigation, substantial expense, and considerable doubt about the ultimate outcome of the case if the settlement is not approved. Further, even if Plaintiffs were ultimately successful, it would take months, if not years, to litigate this case to its conclusion before they would ever recover any money from this case.

Plaintiffs also recognize and acknowledge the risk, length and expense of continued proceedings necessary to prosecute the litigation through trial and appeal, especially in complex cases like this action, and believe that the settlement confers substantial benefits upon the Settlement Group. Accordingly, Plaintiffs agree that the value of an immediate recovery is preferable than continuing to litigate with only a possibility of recovery at the conclusion of the lawsuit.

*c. The Parties Agree That the Settlement is Fair and Reasonable.*

The Parties agree that the terms of the Settlement Agreement are fair and reasonable. Under the Settlement Agreement, TNY agrees to pay members of the Settlement Group amounts ranging from $900.00 to $100.00. The individualized amounts to be paid to each member of the Settlement Group for their minimal, disputed claims were determined based on each Settlement Group member's months worked during the FLSA statutory period and his or her degree of compliance with the Court's Orders and the Federal Rules of Civil Procedure.

For those members of the Settlement Group who did not comply with their discovery obligations and whose claims could otherwise be subject to dismissal (which includes 62 of the 76 members of the Settlement Group), the settlement amounts exceed what he or she would recover under the FLSA were their claims to be dismissed. For the remaining fourteen individuals who complied with their discovery obligations, the settlement amounts will compensate them in amounts ranging from $900.00 to $500.00. For all members of the Settlement Group, these settlement amounts represent a compromise between the Parties for the potential value of their highly-disputed claims and constitute amounts that may exceed what he

or she could possibly recover under the FLSA for any alleged unpaid overtime were this litigation to proceed further.

3. <u>The Settlement Furthers the Purpose of the FLSA.</u>

> Next, the Court must determine whether the settlement agreement undermines the purpose of the FLSA, which is to protect employees' rights from employers who generally wield superior bargaining power. To determine whether a settlement agreement complies with the FLSA, courts look at the following factors: (1) presence of other similarly situated employees; (2) a likelihood that plaintiffs' circumstances will recur; and (3) whether defendants had a history of non-compliance with the FLSA.

*Id.*

The settlement will not undermine the purpose of the FLSA. First, Court-authorized Notice was mailed to more than 1,400 current and former TNY customer service representatives. No individuals who have indicated an interest in joining the action have been excluded from this settlement. (*See generally* Dkt.) To the contrary, the Parties have included in the settlement all individuals who returned consent forms to Class Counsel.[1] Thus, there are no similarly-situated employees who have sought to join this action that are being excluded from this settlement and the rights of absent "class" members are not affected. *Baker*, 2014 WL 700096, at *2.

Second, Plaintiffs' circumstances are not likely to recur because the majority of the members of the Settlement Group (who constitute just five percent of the putative class) are no longer employed by TNY. For those few members of the Settlement Group who remain employed by TNY, the Parties agree that TNY's policies prohibit the conduct alleged in the

[1] Putative class member Catherine Powell executed an opt-in form that was never filed with the Court, and Ms. Powell did not participate in discovery. Ms. Powell is included in the Parties' settlement.

Complaint and these circumstances are unlikely to recur. Last, TNY does not have a history of non-compliance with the FLSA.

Accordingly, as to all members of the Settlement Group, the proposed settlement is fair and equitable, will not undermine the purpose of the FLSA, and should be approved by the Court.

**C. The Class Counsel Fees and Costs Payment is Reasonable.**

In determining whether to approve the settlement of an FLSA claim, the Court must consider whether the employee's FLSA claim "will be compromised by the deduction of attorney's fees, costs or expenses pursuant to a contract between the plaintiff and his or her counsel, or otherwise." *Dorismond v. Wyndham Vacation Ownership, Inc.*, No. 6:14-cv-63-Orl-28GJK, 2014 WL 2861483, at *2 (M.D. Fla. June 24, 2014) (internal citation omitted).

The Settlement Agreement calls for a reasonable payment of $20,000.00 for attorneys' fees and the reimbursement of costs. The Class Counsel Fees and Costs payment was negotiated separately and without regard to the amount paid to the members of the Settlement Group. *See Dorismond*, 2014 WL 2861483, at *3-4. TNY does not oppose Plaintiffs' requested Class Counsel Fees and Costs payment.

The Class Counsel Fees and Costs payment will compensate Class Counsel for the following actions taken on behalf of the putative class and Settlement Group over nearly a two-year period of time:

a. Making all strategic decisions in the case;

b. Investigating and drafting the Complaint, which included, among other tasks, review and analysis of all documents from Plaintiffs and others

relating to the allegations that customer service representatives purportedly had to perform work off the clock;

c. Researching and drafting all motions and legal memoranda in support of, or in opposition to, nineteen motions in this Litigation;

d. Attending hearings;

e. Defending nine depositions;

f. Preparing and serving multiple discovery requests;

g. Reviewing voluminous document productions provided in response to discovery requests;

h. Communicating with members of the Settlement Group regarding discovery;

i. Gathering information in response to discovery requests;

j. Preparing and serving multiple discovery responses;

k. Negotiating, documenting, and implementing the settlement.

Class Counsel conducted this litigation in a coordinated and well-organized fashion to ensure efficiency and minimize unnecessary duplication of work. In addition, where professionally and economically feasible, work was assigned to personnel with lower billing rates in order to provide the best quality work at lower cost. Based on the foregoing, particularly that the attorneys' fees and costs were negotiated and agreed upon separately from the claims of the Settlement Group, Plaintiffs respectfully request that the Court approve the Class Counsel Fees and Costs Payment in the amount of $20,000.00. *Id.* (where attorneys' fees negotiated separately, reviewing court should approve fees "unless the settlement does not appear

reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to his attorney").

## IV. CONCLUSION

For the foregoing reasons, the Parties respectfully request that the Court grant approval of the Settlement Agreement (including the proposed apportionment of the settlement proceeds, attorney's fees and costs, and administrative fees) and enter an order dismissing this action.

Respectfully submitted this 4th day of June, 2015,

*/s/ Walker G. Harman Jr.*
Walker G. Harman, Jr.
Owen Laird
Edgar Rivera
The Harman Firm, P.C.
1776 Broadway, Suite 2030
New York, NY 10019
Phone: (212) 425-2600
Fax: (212) 202-3926
Email: wharman@theharmanfirm.com
olaird@theharmanfirm.com
erivera@theharmanfirm.com

*Attorneys for Plaintiffs*

*/s/ Anthony E. Giardino*
Michael D. Kabat
Joseph W. Ozmer II
Nathan D. Chapman
Anthony E. Giardino
Wargo & French LLP
999 Peachtree Street, NE, 26th Floor
Atlanta, Georgia 30309
Phone: (404) 853-1500
Fax: (404) 853-1501
Email: mkabat@wargofrench.com
jozmer@wargofrench.com
nchapman@wargofrench.com
agiardino@wargofrench.com

Josh A. Marks
BERG HILL GREENLEAF & RUSCITTI LLP
1712 Pearl Street
Boulder, CO 80302
Tel: (303) 402-1600
Fax: (303) 402-1601
Email: jam@bhgrlaw.com

*Attorneys for Defendant Time Warner NY Cable LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on June 4, 2015, a true and correct copy of this **JOINT MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT AND AWARD OF ATTORNEYS' FEES** was e-served upon the following via ECF/PACER:

Walker G. Harman, Jr.
THE HARMAN FIRM, P.C.
1776 Broadway, Suite 2030
New York, NY 10019

Ian D. Kalmanowitz
CORNISH & DELL 'OLIO, P.C.
431 North Cascade Avenue, Suite 1
Colorado Springs, Colorado 80903

*/s/ Anthony E. Giardino*
Anthony E. Giardino